The Burlington, Kansas & Southwestern Railroad Company v. W. H. Johnson.

1. Railroad — *Right-of-Way over Public Land.* The act of congress of July 26, 1866, which declares that "the right-of-way for the construction of highways over public lands not reserved for public uses is hereby granted," does not include railroads within its intent.

2. Homestead Entry—*Possession—Equity.* A settler on the public lands of the United States who makes a valid homestead entry, and continues to reside on and improve the land entered, in compliance with the land laws, has the exclusive right to its possession and use, and to the improvements made. thereon ; and he also acquires equities in the land itself which increase from the time the entry is made until the complete title is earned.

3. Right-of Way — *Condemnation— Compensation.* Such a settler may sell and transfer a portion of his homestead for a right-of-way for a railroad, or his interest therein may be condemned and appropriated for such purpose upon adversary proceedings, and by paying full compensation to the settler therefor.

4. Homesteader—*Nature of Damages.* A homesteader who has entered, and is proceeding lawfully to perfect his title to the land entered, suffers an injury by the building of a railroad over his homestead which differs only in degree from that sustained from the same cause by one who has the complete title.

5. Railroad Company — *Liability for Injury.* A railroad company which enters upon a homestead and constructs a road thereon without his consent and without making just compensation, is liable for the injury thereby done to his interest, the extent of which injury is for the jury to determine.

*Error from Phillips District Court.*

W. H. JOHNSON brought an action in the district court of Phillips county, alleging in substance that he was the occupant and in actual possession of a quarter-section of land in that county under the homestead laws of the United States, and which he had continuously occupied as his homestead, and had cultivated it as a farm. He averred that the Burlington, Kansas & Southwestern Railroad Company, without his consent, wrongfully entered upon and constructed a line of railroad over the land, and had wrongfully appropriated a portion thereof without in any way compensating him for the injury done. The answer of the railroad company was a general denial. A trial was had at the April Term, 1886, with a jury, and testimony was offered to the effect that Johnson was twenty-six years of age, a citizen of the United States, and entitled to the benefit of the homestead laws of the United States; that on the 19th day of July, 1882, he made a homestead entry on the land in question, and with his family had resided upon and cultivated the land since that time; that he had built a house and stables, dug two wells, and broken and put in a tillable condition thirty-five acres or more of the land; that in June, 1885, the railroad company constructed its road across the land and appropriated thirteen and nine-tenths acres; and that, on account of the character of the land, deep excavations and high embankments were made in building the road. It was built in front of the house and stable, the center of the tract being only two hundred and twenty-three feet from the house, and about three hundred feet from the stable, and by reason of deep cuts and high fills and banks, the house and stables were cut off from the timber and water on the other side of the road. There was testimony that the market value of the right of Johnson to the possession and use of the land under his homestead entry was worth at the rate of from seven to twelve dollars per acre for the land taken, and that the portion not taken was depreciated in value from two

hundred to more than six hundred dollars. The court gave the jury the following charge:

"1. This is an action for damages, brought by the plaintiff against the defendant, on account of the taking and appropriating of a right-of-way embracing thirteen and nine-tenths acres of land, over and across a quarter-section of land, situate in said county and state, and described as follows, to wit: the southeast quarter of the southwest quarter and the southwest quarter of the southeast quarter of section four, and the northwest quarter of the northeast quarter and the northeast quarter of the northwest quarter of section nine, township one south, range nineteen west, containing one hundred and sixty acres. The plaintiff claims to be entitled to damages for the taking of such right-of-way by virtue of a homestead entry on said land made July 19, 1882, by him, and his subsequent compliance with the United States laws in relation to acquiring title to the public lands. Under the homestead laws of the general government, a person who is twenty-one years of age and a citizen of the United States, and who has not had the benefit of the homestead laws, is qualified to make a homestead entry on not to exceed one quarter-section of the public domain, and if the entryman subsequent to such entry continues to reside upon and cultivate his entry and does not at any time abandon his homestead entry for a longer period than six months, he may, after five years of continuous residence and cultivation, prove up under his entry and obtain a patent for the land from the government. The entryman under the said homestead laws by such entry and subsequent residence and cultivation acquires the right of possession of the land embraced in his entry, the right to use of the same (including the right to grass and a sufficient amount of the timber growing thereon, if any, for firewood, and in the improvement of the land), the right and ownership of all improvements put upon the land, and the right to acquire a full legal and equitable title thereto. By the act of putting on his homestead entry, the entryman acquires the exclusive right, by continuous residence and cultivation of the land, to obtain the full legal title; and his equities increase from the time of his entry to the expiration of the five years provided for in the government land laws; and if at the end of five years he has complied with the said laws in all particulars, and there is no valid adverse prior claimant, the government issues to him a patent for the land.

"2. If you find from the evidence that the plaintiff had a valid homestead entry on the land above described, within the meaning and as explained in the first instruction, at the time of the taking of a right-of-way amounting to thirteen and nine-tenths acres across said land, (the taking of which is admitted by defendant,) and that the same have been damaged by reason thereof, and that such damages have not been paid or settled for, you may then take in consideration the following matters or elements as a basis for fixing the amount of such damages: First, the market value of the possession and use of the strip of ground containing the thirteen and nine-tenths acres taken by the defendant for the right-of-way at the time of the taking, in June, 1885. In this connection you will remember that the company only acquires the perpetual right to use the right-of-way in the operating and maintaining of its road-way, and that the ultimate fee remains in the land-owner, and he can use the right-of-way for every purpose not incompatible with, and which does not interfere with, the use thereof, of the defendant, in the operating and maintaining of its road. Second, the difference between the actual market value of the right of possession, use and improvements in the remaining one hundred and forty-six and one-tenth acres immediately before the taking of the right-of-way, and immediately thereafter. Third, seven per cent. interest on the amount of damages to the land (if you find from the evidence that it was damaged) from June 29, 1885.

"3. In arriving at the amount of damages done to the plaintiff's interests in said tract of land, if any, you are not to make any allowance for any enhancement of the value thereof, if any, growing out of a knowledge on the part of the people or public in the vicinity of the land that defendant was about to construct a railroad through the neighborhood in which the land is situated. You have a right, and it is your duty, to take into consideration the physical characteristics of the land described in the petition, the uses to which it was put, and, from the nature of things, is suitable for; the course of the railroad across the land; the shape the remaining portion of the land is left in; the convenience or inconvenience of using the portion not taken for the purposes for which the land is used; and the increased liability, if any, of accidental fires from passing trains. On the whole, you may take into consideration all incidental loss, inconvenience and damage, present and prospective, which may be known,

or may reasonably be expected to result from the construction and operation of the railroad, in a legal and proper manner.

"4. The difference between the fair market value of the property taken as it was before and after the taking, not the estimate derived from fancy local attachment, or otherwise, which the owner may put upon it, or, on the other hand, the price which it would bring at a forced sale, is the true measure of the owner's consideration. The use to which the right-of-way is to be put may be considered, but annoyances which do not differ in kind from those suffered by the community in general are not to be taken into consideration. The market value is meant that price at which a similar property is generally sold at the time and in the vicinity of the property in question. You are the exclusive judges of the evidence, of what it proves or disproves, and of the credibility of witnesses. In arriving at the weight that ought to be given to the testimony of any witnesses who had testified in this cause, you can take into consideration the interest such witnesses may have, if any, in the result of this case, his disposition to tell the truth, opportunities for knowing about the matters and things about which he testifies, and his demeanor while on the witness stand. This case should be tried and determined by you the same as an ordinary case between private parties, and without any reference to the fact that a private person is plaintiff and a corporation is defendant."

The jury returned a verdict in favor of Johnson, fixing the amount of his damages at $454.25; and also answered special questions that were submitted, as follows:

"*Ques. 1.:* Do you find from the evidence that the plaintiff, W. H. Johnson, had a valid homestead placed on the land in question, on July 19, 1882; and was plaintiff over the age of twenty-one years at the time he homesteaded said land; and has plaintiff complied with the homestead law? *Ans.:* We do.

"Q. 2. Has plaintiff at all times since used said land, and cultivated the same for agricultural purposes? A. Yes.

"Q. 3. What was the market value of the use and possession of the thirteen and nine-tenths acres of land appropriated by defendant for their right-of-way over said land? A. $139.

"Q. 4. What was the actual market value of the use and possession of said land as an entire tract just prior to the location of said railroad? A. $1,168.80.

"Q. 5. What was the depreciated market value of the right of use and possession of the remaining one hundred and forty-six and one-tenth acres, if you find there was depreciated market value on account of location and operating said railroad over said homestead? A. $293.20.

"Q. 6. What amount of interest do you find that plaintiff is entitled to recover on said sum? A. $23.05."

A motion to set aside the findings of fact and the verdict of the jury, and to grant a new trial, was overruled by the court, and judgment was given in favor of the plaintiff for $454.25. *The Company* has removed the case to this court.

*W. W. Guthrie, J. W. Deweese,* and *Pratt & Lewis,* for plaintiff in error.

*Geo. W. Stinson,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: There is but little controversy regarding the facts of this case. Johnson entered the land as a homestead, on July 19, 1882, and he had complied with all the conditions of the act of congress respecting the acquirement of title, excepting that he had not resided on and cultivated it the full period of five years. The improvements which he had made were of a substantial character. His residence thereon had been continuous from the time of entry, and by continuing to meet the requirements of the homestead law for about a year after the trial, and by making final proof, he would be vested with a full and complete ownership in the land and entitled to a patent therefor. The railroad company constructed its road without his consent, and without making or offering to make compensation to him for the damages done. It may also be fairly said that in the view we take, the damages allowed by the jury were not exorbitant. The principal point in controversy is in respect to the measure of damages to which Johnson, being a homesteader, was entitled. The railroad company contends that because he holds under a homestead entry, and has not as yet acquired the full legal title,

he is entitled to recover nothing beyond the mere injury done to the improvements which he had placed on the land. We cannot agree with this contention. The claim is based mainly on an act of congress of July 26, 1866, which declares that "the right-of-way for the construction of highways over public lands not reserved for public uses is hereby granted." (Rev. Stat. U. S., § 2477.) It is argued that railroads are highways within the meaning of this provision, and that the plaintiff took his homestead subject to the right of the railroad to appropriate a right-of-way over the same without any compensation for any value of the soil or damages otherwise than to his improvements. The term "highway" used in the section quoted, does not, in either its ordinary or strict sense, include railroads. It is true that in a certain sense a railroad is a public highway, to be constructed and operated according to law, and subject to public control. It can only be used, however, in a particular manner, and is not open to common use for foot passengers, horse passengers, animals and carriages, as an ordinary highway may be used. In the usual understanding, a highway is one which is common to all people without distinction, and which they may travel over on foot or horseback, or in carriages. (Thompson on Highways, 1; Angell on Highways, 3.) A railroad and a common highway are essentially different in regard to construction, control and use, as well as ownership, and the distinctions are so well understood that a mention of them is unnecessary. It is a familiar rule of law that in interpreting statutes, words and phrases are to be taken in the ordinary sense and common acceptation, unless it appears from the context of the act that a different meaning was intended. We discover nothing in the provision in question, or in the subsequent legislation of congress, which indicates that an unusual meaning was attached to the word, or that it included railroads. Instead of that, we find that since the law in question was enacted, congress has deemed it necessary by both general and special acts, to grant a right-of-way to railroads over the public domain. Aside from several special acts, a general one was passed

on March 3, 1875, granting to any railroad the right-of-way through any public lands of the United States. It provided at length the conditions to be observed, and the steps that were to be taken in order to secure the benefit of the act. No reference is there made to the act of 1866, but congress, as well as those who were instrumental in obtaining the legislation, seem to have proceeded upon the theory that the act of 1866 did not grant a right-of-way for railroads. (18 Stat. at Large, 482.) On March 3, 1873, another act was passed by congress, which indicates to some extent the legislative understanding of the act of 1866. It was then provided that a settler on the public lands, either by virtue of the preëmption or homestead law, shall have the right to transfer by warranty against his own acts, any portion of his preëmption or homestead for the right-of-way of railroads across such preëmption or homestead. (Rev. Stat. U. S., § 2288.) Neither of these enactments purports to modify or repeal the act of 1866. It was wholly unnecessary for congress to grant a right-of-way to railroads, or to provide that a settler may convey his interest in a preëmption or homestead for such purpose, if the act of 1866, already in force, embraced railroads within its intent. It is true that the case to which we are referred, *F. & P. M. Rly. Co. v. Gordon*, 41 Mich. 420, holds that railroads are highways within the meaning of the act of 1866. The court in that opinion concedes that when the term "highways" is used in legislation, the common highways of the country are generally to be understood. The construction that railroads were intended was based on the apparent liberal policy pursued by congress in encouraging railroads to build through the new and unsettled portions of the country. The court, however, expressed doubt in regard to the conclusion which it reached, and it does not appear that its attention was called to the subsequent general legislation of congress expressly granting a right-of-way to railroads. An examination of the congressional legislation on the subject, and having in mind the rule of interpretation that the usual meaning is to be given to words in the statute, unless another is obviously intended,

we have come to the conclusion that only the common high-
ways of the country were intended to be included in the term
used in the act of 1866.   It is not claimed that the railroad
company has complied with the requirements of the act of 1875
to secure a right-of-way across the land in question; and if it
had, the question would still remain, whether the land which
had been entered under the homestead law would be treated as
public land, liable to be embraced within and to be conveyed by
a general grant.   Under the rulings of the land department of
the government, "a valid homestead entry operates as an ap-
propriation and reservation of the land embraced in the same,
so long as it remains in force and uncanceled.   The entry
while in force segregates the tract from the mass of the public
domain." (*White v. H. & D. Rld. Co.*, 2 Copp's U. S. Public
Land Laws, 1882, p. 878; *Wilcox v. Jackson*, 13 Pet. 516;
*Witherspoon v. Duncan*, 4 Wall. 218.   Opinion of Attorney
General McVeigh, 1 Copp's U. S. Public Land Laws, 1882,
p. 388.)   But whether or not it is so segregated by settlement
and entry, we agree with the learned judge who
tried the case, that the homesteader has an interest
in the land beyond the bare improvements placed
thereon, and which cannot be appropriated by a railroad com-
pany without making just compensation.   It is true that he
has not a legal title, and may never acquire it, but when he
makes a *bona fide* settlement and a valid entry of
the land, he acquires an immediate interest to the
entire tract which gives him the right of posses-
sion, and upon making proof of settlement and cultivation for
a period of five years, he becomes invested with full and com-
plete ownership.   As the court below remarked, "the entry-
man acquires the exclusive right, by continued residence and
cultivation of the land, to obtain the full legal title; and his
equities increase from the time of his entry to the expiration
of the five years."   In the act granting to railroads the right-
of-way through the public lands of the United States, con-
gress recognized the possessory claims and interest of settlers
upon the public lands, and provided for their condemnation

1. Railroad—
right-of-way
over public
land.

2. Homestead
entry—pos-
session—
equity.

for the right-of-way of. railroads. (Sec. 3, of act March 3, 1875, 18 Stat. at Large, p. 482.)   In § 2288, Rev. Stat. U.S., it is enacted that—

"Any person who has settled, or hereafter may settle, on public lands, either by preëmption or by virtue of homestead laws, or any amendments thereto, shall have the right to transfer by warranty against his own acts, any portion of his preëmption or homestead . . . for the right-of-way of railroads across such preëmption or homestead; and the transfer for such public purposes shall in no way vitiate the right to complete and perfect the title to their preëmptions or homesteads."

This enactment indicates the view taken by congress with respect to the interest acquired by the settler.   It contemplates not only that he owns the improvements, but that he has an equity in the land itself, which he may transfer for a right-of-way; and it provides how that transfer may be made.   It further recognizes that until this equity is obtained, by purchase or otherwise, the right of the railroad company to enter and appropriate any portion of the homestead for a right-of-way is incomplete.   It is conceded that the defendant in error had made a valid homestead entry, which gave him a preferred right thereto against every individual or corporation, so long as he made compliance with the laws of the United States in regard to the perfecting of his title to the land.   It gave him the exclusive right of possession, the right to all the grass and crops grown on the land, to a sufficient amount of the timber, if any was growing thereon, for firewood, and in the improvement of the land, and, by continuous habitancy and improvement for a year longer, the right to the full, legal and equitable title to the land.   Under the laws of the United States, and the rules of the land department, the entryman is entitled to commutation in several forms, and to certain preference rights, and may also relinquish and sell his improvements and equities in the homestead to another.   The relinquishment must, of course, be made to the United States; but under the rules and practice of the land department it may be made so as to fully protect the transferee, if he be a qualified person, to the same right which his vendor enjoyed.   With all these rights,

the equities of the homesteader are very important and valuable. They constitute a property right, which appears from the testimony to have a well-understood value in the district where the land in question lies, and is worth but little less than the full title to the land. The crops grown upon the land, as well as the improvements placed thereon, belong exclusively to the settler; and if he has a valid entry, and has made the required improvements, he is safe in his possession, and in the ownership of the improvements, and can rest assured that, by continuous residence and compliance with the law, he can obtain the complete title. Indeed, there is an advantage in allowing the legal title to remain in the United States, which is frequently availed of by settlers who, upon making final proof, would be entitled to a patent. Until the equitable title and right to a patent is complete, the lands are not subject to state or local taxation, and the final proofs need not be made until seven years after the entry is made. It has been held by this court that the relinquishment of a homestead claim, and the transfer of the interest of a homesteader, are a sufficient consideration for a promissory note given in payment of such relinquishment and transfer. (*Moore v. McIntosh*, 6 Kas. 39.) Attorney General McVeigh, in an opinion given to the secretary of war, in 1881, held that a claim of a homesteader to public land was initiated by an entry of the land, which was effected by an application of the settler accompanied by the required affidavit and the payment of the commission. He said:

"It is true, a certificate of entry is not then given—the certificate being, under § 2291, Revised Stat. U. S., withheld until the expiration of the five years from the date of such entry, at the end of which period, or within two years thereafter, upon proof of settlement and cultivation during that period, and payment of the commissions remaining to be paid, it is issued; but upon entry the right in favor of the settler would seem to attach to the land, which is liable to be defeated only by failure on his part to comply with the requirements of the homestead law in regard to settlement and cultivation. This right amounts to an equitable interest in the land, subject to the future performance by the settler of certain condi-

tions (in the event of which he becomes invested with full and complete ownership); and until forfeited by failure to perform the conditions it must, I think, prevail not only against individuals, but against the government. That in contemplation of the homestead law, the settler acquires by his entry an immediate interest in the land, which for the time being at least, thereby becomes severed from the public domain, appears from the language of § 2297, Rev. Stat., wherein it is provided that in certain contingencies 'the land so entered shall revert to the government.'" (1 Copp's U. S. Public Land Laws, 1882, p. 388.)

The interest which the settler has may be appropriated for a right-of-way by adversary proceedings, as we have already seen that congress has provided for the condemnation of a right-of-way through a homestead, as well as for its purchase from the settler. Of course the settler does not part with the same interest or value that he would if he had the legal title, and he should only receive compensation for the interest taken from him. The court below, however, in its charge and rulings on the admission of testimony, seems to have carefully restricted the jury to an allowance for the injury done to the rights and interest which the settler had in the land. The appropriation and use of a strip of land through the homestead affected the entire tract. The homesteader had taken and was using it as a single tract, and as his home and farm. The division of the farm into parts of irregular shape, the deep cuts and high fills that were made, and the inconvenience resulting from the construction of the road, constitute an injury to the interest of the settler, which differs only in degree from that sustained by one who has the legal title. The property is taken at the instance and for the benefit of a railroad company, and the injury is occasioned by the company. The extent of the injury is for the jury to determine, and for which the railroad company is liable. We think the case was fairly submitted to the jury, and that the verdict and judgment given are just. The judgment will be affirmed.

All the Justices concurring.

*3. Right-of-way — condemnation — compensation.*

*4. Homesteader — nature of damages.*

*5. Railroad company — liability for injury.*