THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY v. WILLIAM M. HURST.

RAILROAD RIGHT-OF-WAY — *Title—Measure of Damages.*  Where a railroad company by condemnation proceedings procures a right-of-way over land occupied by a person who holds the same as a timber-culture claim under the laws of the United States, the title thereto being still in the United States, the occupant of the land can recover damages from the railroad company only for the diminished value of his interest in the land, and not for the diminished value of the land itself.

*Error from Ottawa District Court.*

THE opinion states the case.   Judgment for *Hurst,* at the August term, 1887.   *The Railroad Company* brings the case to this court.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*Chipman & Maultby,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was a proceeding instituted by the Chicago, Kansas & Western Railroad Company to procure a right-of-way over and across certain lands in Ottawa county, including, among others, the land of William M. Hurst.   The commissioners awarded to Hurst $217 as damages, and after this award was made, Hurst appealed to the district court, where the case was tried before the court and a jury; and judgment was rendered in favor of Hurst and against the railroad company awarding to Hurst the sum of $1,051.25¼ as damages, and the railroad company brings the case to this court for review.

The plaintiff, Hurst, claimed 240 acres of land, all in one body, but it was not all held by the same kind of title.   One portion of the same, consisting of 120 acres, Hurst held by a complete and perfect title, and it is described as follows: The west half of the southeast quarter and the southwest quarter

of the northeast quarter of section 6, in township 11 south, of range 1 west.    The other portion Hurst holds only as a timber-culture claim under the laws of the United States; and the title thereto is still in the United States, and it is described as follows: The east half of the northwest quarter and the northeast quarter of the southwest quarter of section 6, in township 11 south, of range 1 west.    The principal question involved in this case is as follows: Did the court below adopt the proper rule for the measurement of the plaintiff's damages occasioned by the railroad company's procuring its right-of-way across his timber-culture claim?    This question is made manifest from the following statement of a portion of the facts of the case.    The plaintiff in his petition substantially alleged that he was the owner of all the above-described land.    The defendant, the railroad company, as a first defense to the plaintiff's petition set forth a general denial; and as a second defense thereto set forth that the plaintiff had no title to the second-described land, but only a timber-culture claim; and then alleged as follows:

"That said plaintiff has abandoned said lands, and has failed to put out, cultivate, protect and keep in good condition the timber which he is required by law to put out, cultivate, protect and keep in good condition in order to prevent said lands from reverting to the United States, and to protect his title to the same."

This allegation was stricken out by the court, and the defendant excepted.    The case was then tried before the court and a jury, and the court instructed the jury among other things as follows:

"1. In assessing damages in this case, you may take into consideration all incidental loss, inconvenience, and damage, present and prospective, which may reasonably be expected to result from the construction and operation of the road in a legal and proper manner.

"2. The actual value of the land appropriated by the defendant for its right-of-way; and

"3. Damage to the rest of the farm by reason of the appropriation of the right-of-way and the construction of said railroad upon and through the farm; and to arrive at the

damage, if any, to the rest of the farm, you may take into consideration the general course of said road through said farm, the height of the embankments, the depth of cuts, the inconvenience, if any, of passing from one part of the farm to another, if any such appears; the inconvenience, if any, of passing from the farm to the public highway; the expense of making and maintaining farm-crossings."

The jury then rendered a general verdict assessing the plaintiff's damages at $1,051.25¼, and made several special findings of fact. They found that "the fair market value per acre of the lands claimed by the plaintiff" "immediately before" the right-of-way was taken was "$15 per acre;" and immediately afterward was "$11.75 per acre." They in effect found that the land to which the plaintiff had a full title was damaged in the aggregate to the amount of $468.47. And they found that the timber-culture claim was damaged as follows:

"5. How many acres did the defendant take for its right-of-way out of the east half of the northwest quarter and the northeast quarter of the southwest quarter of said section 6? *Ans.:* Thirteen and seven-hundredths acres.

"6. What was the fair market value per acre of the land taken by the defendant for its right-of-way through the east half of the northwest quarter and the northeast quarter of the southwest quarter of said section 6, at the time said right-of-way was so appropriated by the said defendant? A. $18 per acre."

"9. At the time the defendant's said right-of-way was condemned through the lands described in the first question as set forth above and numbered one, was the title to the east half of the northwest quarter and the northeast quarter of the southwest quarter of said section 6 in the United States? A. Yes.

"10. At the time the defendant's said right-of-way was condemned through the east half of the northwest quarter and the northeast quarter of the southwest quarter of said section 6, did the said plaintiff have any interest in said lands except such as he held under a timber-culture entry made under the laws of the United States? A. No."

"12. In addition to the value of the land taken by the defendant for its said right-of-way, and at the time of such tak-

ing, what were the real and actual damages to the remainder of the east half of the northwest quarter and the northeast quarter of the southwest quarter of said section 6 by reason of the taking of said right-of-way through the same by the defendant? A. $347.52$\frac{1}{4}$."

The aggregate amount of damages allowed by the jury to the plaintiff with reference to the timber-culture claim was $582.78$\frac{1}{4}$. It would seem from the foregoing proceedings that the case was tried in the court below by the plaintiff and the court upon the theory that the plaintiff had the right to recover damages to his timber-culture claim in the same manner and to the same extent as though he had full and complete title to the land, and that the damages awarded to him were awarded to him upon that theory. This was error. (*E. M. N. & S. E. Rld. Co. v. Gates*, ante, p. 574; same case, 21 Pac. Rep. 632; *H. & G. I. Rld. Co. v. Ingalls*, 15 Neb. 123.) The

*Railroad right-of-way — title — measure of damages.* claimant in such a case can recover damages only for the diminished value of his interest in the land and not for the diminished value of the land itself. (*B. K. & S. W. Rld. Co. v. Johnson*, 38 Kas. 142, and the cases above cited.) The claimant's interest in the land may, under some circumstances, be worth as much as the land itself, while under other circumstances it may be worth scarcely anything; and the claimant may, under some circumstances, be entitled to recover for the diminished value of his interest in the land an amount as great as though he had a full and complete title to the land, while under other circumstances he may not be entitled to any considerable amount. All the facts with regard to the plaintiff's interest in the land, the time he has occupied it, the work done upon it, etc., as well as with respect to the injuries done to the land by the railroad company, should be permitted to go to the jury, and then the jury should be permitted to assess the plaintiff's damages from a consideration of all these facts.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.