THE CHICAGO, KANSAS & NEBRASKA RAILWAY COMPANY V. JUDSON B. VAN CLEAVE.

1. RAILROAD RIGHT-OF-WAY — *Measure of Damages.* In determining the damages of a landowner, a portion of whose land is appropriated for a right-of-way of a railroad, the railroad is to be regarded as one entire thing, and he is entitled to compensation for all damages directly resulting to the remainder of his land from the location and construction of the road, whether the roadbed be acually placed on that portion of the right-of-way taken from his land or not.

2. INSTRUCTIONS, *Based on Error.* Where instructions are asked based on erroneous statements or assumptions of fact, they should be refused.

3. PUBLIC LANDS — *Railroad Grant, When Effective.* The act of congress of March 3, 1875, entitled "An act granting to railroads the right-of-way through the public lands of the United States," did not convey a present right-of-way to all railroad companies that might thereafter be organized over the public lands then belonging to the United States; but such grant took effect only on the approval of the location of the road by the secretary of the interior.

4. LOCATION OF ROAD — *Approval — Compensation.* Where the report of the commissioners condemning the right-of-way for a railroad was filed before the location of the road was approved by the secretary of the interior, a subsequent approval does not take away the landowner's right to compensation.

*Error from Thomas District Court.*

THE plaintiff made a timber-culture entry on the northwest quarter, section 31, township 7, range 33, in Thomas county, on the 11th day of May, 1886, and entered into possession of said land and continued to hold it up to the time of the trial of this action. The land adjoins the town site of Colby, being immediately north of said town site. The defendant railway company located its line of road so that a right-of-way a hundred feet in width would include 2.97 acres of plaintiff's land, and a little more than that much of the town site, and would take a portion of plaintiff's land along the whole southern part of it. That portion of the right-of-way included in the town site was first secured, and on February 25, 1888, an ordinance was duly passed by the mayor and council of the city of Colby, granting the defendant the right-of-way across and through the streets and alleys of the city, and vacating certain streets and alleys crossed by the railroad. Afterward the defendant instituted proceedings before the board of county commissioners for the condemnation of that portion of a right-of-way for its line falling on plaintiff's quarter section, and a report of such condemnation by the commissioners was duly made and filed on the 8th of May, 1888, awarding to plaintiff $150 damages. From this award plaintiff appealed to the district court, where the case was tried with a jury, and judgment rendered against the

railway company for $2,977.33.    From this judgment, the
defendant institutes this proceeding in error.

On the 2d day of March, 1888, the defendant filed with
the secretary of the interior a copy of its articles of incorpora-
tion, and due proof of its organization under the same.    The
map showing the location of its line was not approved, how-
ever, until July 11, 1888, and it is admitted that the de-
fendant in all things fully and duly complied with all the
requirements and provisions of the act of congress entitled
"An act granting to railroads the right-of-way through the
public lands of the United States," approved March 3, 1875,
as to filing a copy of its articles of incorporation and proof
of organization under the same, and as to filing a profile and
map of its road.

*M. A. Low*, and *W. F. Evans*, for plaintiff in error.

*W. S. Wilcoxon*, and *E. A. McMath*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: The first error alleged is in refusing the fol-
lowing instruction:

"7. If the jury believe from the evidence that the cut or
excavation complained of in this case was made by the defend-
ant for the purpose of bringing its roadbed to grade, and that
said cut or excavation was made on land lying south of the
land to which the plaintiff claims to have a timber-culture
entry, then the plaintiff cannot recover anything in this action
on account of said cut or excavation."

There was evidence introduced tending to show that no
part of the track was placed on plaintiff's land; that in con-
structing the road a small part of a borrow-pit extended on
to plaintiff's land, and that an embankment was made on it
by waste dirt thrown out from the cut.    The contention on
behalf of the plaintiff in error is, that plaintiff can recover
damages solely for the injuries sustained by him because of
the use of that part of the right-of-way taken from his land,
and that nothing can be recovered because of cuts and em-

bankments made on the town site, or of the construction and operation of the road along that part of its right-of-way. But one authority, *Kucheman v. Railway Co.*, 46 Iowa, 366, decided by a divided court, is brought to our attention, which in any manner sustains plaintiff in error's contention. The opposing view is sustained by the supreme court of Wisconsin in the case of *Blesch v. Railway Co.*, 48 Wis. 168. That case was twice before the court, and the language used by Justice Cole in rendering the opinion of the court on the first hearing (43 Wis. 183) is repeated with approval in the last opinion, as follows:

"The counsel for the company argued that the plaintiff should recover such damages only as resulted from the six-inch roadbed encroachment upon his premises, such damages as the plaintiff sustained by reason of the operation of the road, and that portion of the street lying west of the center line thereof in front of his premises. If by this it is meant that the plaintiff could recover only the fractional part of the damages which the construction and operation of the road worked to his premises, a bare statement of the proposition is sufficient to show its unsoundness. A railroad

1. Railroad right-of-way —measure of damages.

is an entire thing, and it is impossible for any human intelligence to separate the loss or injury which its operation causes, apportioning so much to one portion, and so much to another. But we suppose the plaintiff was entitled to recover all the loss which he had sustained by reason of the trespass of the company, and in consequence of the road being operated on his land, according to the rule above stated."

The case of *Kucheman v. Railway Co.*, supra, was cited and considered by the court, and the question here presented ably and thoroughly discussed. The conclusion reached was that, where a portion of the plaintiff's land is appropriated for its right-of-way by the company, he is entitled to recover for all the injuries he sustained, flowing directly from such appropriation, and that the railroad is to be treated as one entire thing. It may be conceded that, if the railroad company had constructed its road just over the line entirely on the town site, without appropriating any of plaintiff's land

for its right-of-way, the plaintiff could not recover anything therefor. This often appears to work great hardship. It sometimes happens that a railroad company builds its road in such manner as to greatly injure adjacent property, and it seems a great hardship for landowners to sustain such injuries and be without remedy. That, however, is not the case under consideration. Here, the company concedes the necessity of having a portion of plaintiff's land for its right-of-way. It seeks to condemn the right to use it for necessary purposes connected with the construction and operation of its road. Having obtained such right, it is not limited in the use of it to the one roadway already constructed, but it has the right, if it chooses, to construct sidings or other tracks on that portion of the right-of-way taken from plaintiff's land, or, it may move its line over on to his land. The right to condemn the land is based on a necessity existing, or at least supposed to exist, that the company should have it for use in connection with its road. We think the cuts, embankments, tracks, ditches and right-of-way are to be considered as one entire thing in determining the plaintiff's damages. Usually, the appropriation of a narrow strip along one of the boundary lines of a tract of land results in comparatively little damage to the land not taken, but it is not always so; and where any portion of the plaintiff's land is condemned, we are unable to conceive any rule by which the plaintiff's damages could, or should, be measured at either more or less than the whole damage which he actually sustains by reason of the appropriation of his land and the construction of the road.

The fourth, fifth and fourteenth instructions asked are similar to the seventh, above quoted, and merely present the same question in a little different form. The defendant asked the following instruction:

"10. The court instructs the jury that the plaintiff cannot recover anything in this action because of the insufficiency of the crossing mentioned in the evidence on the road west of the land in question, and such matter should be altogether excluded from your estimate."

In commenting on the refusal of the court to give this instruction, counsel say in their brief that the crossing was constructed on quite an elevation, and it was difficult and inconvenient to cross at that point, and that one witness testified that he took this matter into consideration in estimating the amount of plaintiff's damages. Counsel assume in their briefs that this crossing was improperly constructed, but fail to call our attention to any evidence showing it to have been so. No claim appears to have been made by the plaintiff below that the crossing was improperly constructed. We must therefore assume that the company performed its duty so far as it was practicable for it to do so, and made as good a crossing as could reasonably have been made under the circumstances. The testimony of the witness referred to by counsel was drawn out on cross-examination by the defendant below, and does not appear to us to have been regarded by anyone at the trial as of special importance. The defendant also asked the following instruction:

2. Instructions, based on error.

"15. The court instructs the jury that ordinance No. 36 of the city of Colby, introduced in evidence in this case, was, on the 26th day of March, A. D. 1888, and at all times since has been, and is now, a valid and legal ordinance of said city, and that all that part of the streets and alleys of said city lying south of the south line of the quarter section of land described in plaintiff's petition, and north of the south line of the defendant's right-of-way, as shown by the plat introduced in evidence, were, on said 26th day of March, 1888, and at all times since have been, and are now, absolutely vacated and discontinued."

This instruction was properly refused. It seems to be conceded that there was a road crossing the railroad at the southwest corner of plaintiff's land, on which the crossing mentioned in the tenth instruction asked by the defendant was constructed.

There is also evidence in the record tending to show that there was a street running along the north side of the town

site south of plaintiff's land.  In view of this testimony, the instruction was properly refused.

Complaint is made of the overruling of an objection by the defendant to the following question asked the witness Kenley:

"Ques.  Just state how much less the plaintiff's interest was worth by reason of the embankment, and that alone, laying aside the cut?   Ans.  $2,500."

This question was of course improper, but it was asked on reëxamination of the witness, after counsel for the defendant had cross-examined by asking him as to the amount of damage occasioned respectively by the cuts and embankments. In view of the nature of the cross-examination, it cannot be held reversible error for the court to have overruled the objection.   We think the measure of damages was correctly stated by the court in its instructions.   The plaintiff's recovery was restricted to the value of his right of possession of the strip of ground actually taken, plus the difference between the actual market value of his right of possession to the remaining portion of the land immediately before and immediately after the appropriation of the right-of-way, with interest thereon from the date of filing the report of the commissioners. The attention of the jury was directly called to the fact that the plaintiff had not then perfected his title, and that he could recover damages only to the extent of the injuries caused to his actual existing interest in the land.

Lastly, it is contended that the defendant company acquired a right-of-way over this land by virtue of the act of congress of March 3, 1875, which was prior to the rights of the plaintiff under his timber culture entry.   Section 1 of this act reads:

"That the right-of-way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory, except the District of Columbia, or by the congress of the United States, which shall have filed with the secretary of the interior a copy of its articles of incorporation, and due proofs of its organiza--

tion under the same, to the extent of 100 feet on each side of the central line of said road; also the right to take from the public lands adjacent to the line of said road material, earth, stone and timber necessary for the construction of said railroad, also ground adjacent to such right-of-way for station buildings, depots, machine shops, side tracks, turn outs, and water stations, not to exceed in amount 20 acres for each station, to the extent of one station for each 10 miles of its road."

"SECTION 4. That any railroad company desiring to secure the benefits of this act shall, within 12 months after the location of any section of 20 miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within 12 months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road, and, upon approval thereof by the secretary of the interior, the same shall be noted upon the plats in said office, and thereafter all such lands, over which such right-of-way shall pass, shall be disposed of subject to such right-of-way: *Provided*, That if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of such road."

It is contended that this act was a grant *in præsenti* to the defendant of a right-of-way over the public domain, to be thereafter designated in the manner provided by the act, and that when the defendant located its line, and obtained an approval by the secretary of the interior of such location, the defendant's rights related back to the date of the passage of the act, and are superior to those of the plaintiff, whose timber culture entry was made intermediate to the time of the passage of the act and the location of the defendant's road. The cases of *Railroad Co. v. Baldwin*, 103 U. S. 428; *Bybee v. Railroad Co.*, 11 Sup. Ct. Rep. 641; *Noble v. Railroad Co.*, 13 id. 271, are cited in support of this contention. In the first case named, the supreme court of the United States had under consideration the act of July 23, 1866, granting to the St. Joseph & Denver City Railroad Company a right-of-way. The general course of this road was stated in the act, and cer-

tain points upon its route were named. It was held, that the act was a grant *in præsenti*, and that the railroad company's rights, after its line was definitely located, were fixed as of the date of the act.

In the Bybee case, the grant was under an act of congress of July 25, 1866, to such company organized under the laws of Oregon as the legislature of said state should thereafter designate, to aid in the construction of the railroad and telegraph line from the Central Pacific railroad, in California, to Portland, in Oregon, and the court held that also a grant *in præsenti*.

In the case of *Noble v. Railroad Co.*, supra, the court had under consideration this act of March 3, 1875. The real point of controversy in the case was, whether Secretary Noble could annul the approval by his predecessor of the location of the company's line of road, and thereby defeat its rights, and the court held that he could not. It is true that in the opinion the following language occurs:

"The language in that section is that the right-of-way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory," etc.

"The uniform rule of this court has been that such an act was a grant *in præsenti* of lands to be thereafter identified. (*Railway Co. v. Alling*, 99 U. S. 463.) The railroad became at once vested with a right of property in these lands, of which they can only be deprived by a proceeding taken directly for that purpose."

It will be noticed that no question was before the court arising between the railroad company and a person claiming adversely a right to any particular tract of land. The attention of the court was directed to the question whether, on the approval of the map and profile by the secretary of the interior, the company's rights became vested, or whether the matter was still within the control of the secretary of the interior. The court held the action of the secretary in approving the location of the road final. What is said with

43 — 52 KAS.

reference to the grant being one *in præsenti* was not necessary to a decision of the case.   It was only necessary for the court to hold that the company's rights vested on the approval of the location by the secretary.   Relation back to the date of the act would be wholly unimportant as affecting the decision of the question before the court.   If the act has the effect claimed by counsel, very surprising results follow.   The defendant company was not in existence at the time of the passage of the law.   It is very difficult to see how congress could have made a grant which should take effect at the date of its passage, and thereby confer present rights on a company the existence of which was not then even foreshadowed. If under this act the defendant company acquired a right-of-way to construct any railroad contemplated by its charter over any lands then belonging to the government, it follows that any and every corporation existing at the time the act was passed, or which has been or may hereafter be created while this act remains in force, have the right already vested *to* construct railroads over what was the public domain on the 3d of March, 1875, and this without reference to the great increase in the value of the lands in many parts of Kansas and other states since that time.   This construction of the law does *not seem* to have been thought of by any of the railroad companies that have constructed so many miles of road since that time, but the practice of purchasing or condemning a right-of-way has been universally followed.

We think the fourth section of the act above quoted clearly provides that the grant shall take effect only after the approval and filing of the map and profile; and that the words, "and thereafter all such lands over which such right-of-way shall pass shall be disposed of subject to such right-of-way," clearly imply that lands disposed of prior thereto will not be subject to any burdens imposed thereon by said act.   This view of the law was intimated by this court in the case of *Railroad Co. v. Johnson*, 38 Kas. 142, but in that case there was no claim that the railroad company had complied with the act.

3. Public lands—railroad grant, when effective.

In this case it is claimed that the act has been complied with, but it appears from the map introduced in evidence, that it was not approved by the secretary of the interior until July 11, 1888, while the condemnation proceedings were completed on the 8th day of the preceding May.   By instituting proceedings to condemn the land, the company would seem to have admitted the right of the plaintiff to compensation, and we think a subsequent compliance with the act of congress could not have the effect to defeat the plaintiff's right of recovery.

4. Location of road — approval — compensation.

Though the amount of the verdict appears large, no complaint is made that it is not supported by the evidence, or that it was given under the influence of passion or prejudice.

Judgment will be affirmed.

All the Justices concurring.