Henry W. Lengyel, J.
This is a claim for the appropriation of claimant’s land pursuant to section 30 of the Highway Law, which proceeding is described as F. A. I. 505-1-3 Federal Interstate Eoute 505, Broad Ave.-Brandywine Ave., Broome County, Map. No. 143, Parcel No. 238 and Map No. 229, Parcel No. 336.
*844 The aforesaid maps and descriptions were filed in the office of the County Clerk of Broome County on the 17th day of May, 1962 and personal service was made on the claimant on the 9th day of August, 1962.
The claim was filed with the Clerk of the Court of Claims and the Attorney-General on the 26th day of June, 1963 and has not been assigned or submitted to any other court or tribunal for audit or determination. The court was advised during the trial that any claim relating to Map No. 235, Parcel No. 237 was settled.
The court adopts the description of the appropriated property as shown on the maps and descriptions filed in the Broome County 'Clerk’s office, copies of which are attached to the claim and same are incorporated herein by reference.
Claimant was the owner of the property by reason of a deed dated July 31, 1958 from Cleve-Walt Holding Company, Inc., grantor, to Universal Instruments 'Corporation, grantee, recorded in the Broome County 'Clerk’¡s office on August 14, 1958 in Liber 981 of Deeds at page 189.
Before the appropriation the property consisted of approximately 10.71 acres in the 'City of Binghamton. The property has frontage of 398± feet on the south side of Bevier 'Street and extends in a southerly direction between North Griswold Street and the Erie-Lackawanna Railroad a depth of approximately 1,400 feet. Its width at the rear line is approximately 232 feet. The developed portion of the lot is the frontage along Bevier Street for a depth of approximately 415 feet. Beyond this depth the land is unimproved. All the land is relatively level and at grade with Bevier and North Griswold Streets. A one-story factory building has a setback from Bevier Street of ■approximately 155 feet. The factory building is a one-story building without basement and built of 10-inoh cinderblock. ■The main building is 180 feet by 200 feet and there are three small extensions or wings. The total area of the building is 38,089 square feet. It was built in about 1952 and is in excellent condition. The building was designed for expansion. There is a temporary wall at the south end of the building which will permit expansion in a continuous construction line to the south. The land in the front and east of the building is attractively landscaped. An 18±-foot-wide blacktop drive leads from Bevier Street to the loading door at the rear of the building. The area between this 18±-foot drive and North Griswold Street is a gravel surface parking area. Additional macadam and gravel parking is located at the rear of the building. The entire area is fenced.
*845 The highest and best use of subject property both before and after the appropriation is heavy industrial.
The subject proceeding involved two easements applied to claimant’s land. Map No. 143, Parcel No. 238, containing 23,100± square feet, was a temporary easement 60± feet wide and an average of 385± feet in length which bisected subject property from east to west. Said easement was located a few feet to the south of the aforesaid factory building. It was stipulated at trial that this temporary easement was in force for two years. The claimant’s appraiser assessed damage because of this easement by determining the fair rental value of the easement area and also damage because of an alleged temporary loss of access to the rear of the building for shipping and delivery of coal and removal of ashes and for temporary loss of parking area. The State objected to alleged damages for these temporary losses and inconveniences and we sustained the objection. We point to the case of Spencer v. State of New York (206 App. Div. 376, 377) wherein it was stated: “ The claimant is entitled to recover the loss in rental value during the term of the appropriation, plus further loss, if any, resulting from damage to the fee arising from the user of the easement. ’ ’ We do not consider such alleged -temporary inconveniences to be compensable items of damage. We point out also that from the testimony of Mr. Ahearn some arrangement was made with the contractor to allow access for coal delivery and removal of ashes. We find a value for the 23,100± square feet under the temporary easement of $9,240. We find a fair rental value of $924 a year; or, a total fair rental value of $1,848. We also find a damage of $500 to the fee in that the' parking area was torn up during construction and was not replaced by the State.
Map No. 229, Parcel No. 336, containing 3,862± square feet, was a permanent easement under ground for the purpose of laying and maintaining a drainage pipe not to exceed 7 feet in inside diameter. Said easement was 10 feet wide and bisected the subject property immediately south of the existing factory building for an average length of 386± feet.
At the trial the parties introduced into evidence a stipulation which defined the rights and obligations of the claimant and the State under .said permanent easement. Claimant has the right to build over the easement area so long as it follows certain delineated construction procedures and also does not interfere with the -State’s right ‘ ‘ to operate, maintain, repair, reconstruct, and replace” the drainage pipe. The State has the right ‘1 to operate, maintain, repair, reconstruct, and replace *846 said pipe,” provided it does not interfere with any building, structure, or appurtenance thereto. The State further agrees that where it might have to disturb ground surface it would be restored to its former condition. Although not stated in said stipulation, the court finds that, as the permanent easement reservation clause extends to the claimant, its successors and assigns, the stipulation also extends to the claimant, its successors and assigns.
The claimant’s expert engineer testified that the easement caused an additional construction cost over the easement area of $26,420. The State’s expert engineer estimated this cost to cure at $25,000. Both of these witnesses were obviously expert and honest in their estimates and we could accept either estimate with complete equanimity. However, we have accepted the claimant’s engineer’s estimate as we believe that he had a longer and more complete association with this problem. We find the cost to cure to be $26,420.
The State made the point that it had left steel pilings in the ground on either side of the drainage pipe although normally such pilings are removed and reused. The State estimated these pilings had a value of $35,000 and were a benefit to claimant. We believe that it could also be found that if such pilings had not been left in the ground the cost to cure of construction over the easement would have been greater. We, therefore, find that the steel pilings left were a benefit to both parties and we have not considered them as either a plus or minus factor in our estimate of damages.
The building on subject property was designed for expansion in accordance with corporate plans made several years prior to the appropriation. The permanent easement, if not cured, prevented such utilization of subject property with a resultant consequential damage in addition to the consequential damage caused by the fact of this additional burden on the property. If claimant had not been able to cure this damage by bridging the easement area with the aforesaid special construction procedures we would have found consequential damages in the sum of $60,000.
We do not agree with the State’s position that the cost to cure was only consequential damage to the property.
The permanent easement would always be an adverse factor, which a purchaser would consider in arriving at an offer to purchase. The fact that the State might have to go down through ground area to make repairs or reconstruct this pipe would be an adverse factor. In relation to the total fair market value of this property this damage is small but it still exists. *847 We find a total consequential damage of $36,240, which includes the aforesaid cost to cure.
We find that the fair market value of the subject property before the appropriation was $402,926; that the fair market value of subject property after the appropriation was $366,186; and, that the amount by which claimant has been damaged is $36,740; of this amount, $500 represents direct damage and $36,240 represents consequential damage to the remainder. We also find, as stated above, a fair rental value of $1,848.
We have viewed the property.
The claimant is awarded the sum of $38,588 for all damages direct and consequential, and fair rental value, with interest, thereon from May 17, 1962 to November 17, 1962 and from June 26,1963 to the date of entry of judgment herein.
The award to claimant herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having any right or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway, or public or private right of way or the bed thereof within the limts of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer and railroad lines.
The parties hereto shall have 10 days from the date of receipt of this decision in which to submit proposed findings of fact which, if submitted, shall be marked in accordance with this decision and the requirements of OPLE 4213; if not submitted, they will be deemed waived.