BRONXVILLE PALMER, LTD., Respondent-Appellant, *v.* STATE OF NEW YORK et al., Appellants-Respondents. (Claims Nos. 36855, 37536 and 37146.)

Third Department, February 10, 1971.

*Scribner & Miller* (*Herbert Plaut* of counsel), for respondent-appellant.

*Louis J. Lefkowitz, Attorney-General* (*Peter J. Dooley, Jr.,* and *Ruth Kessler Toch* of counsel), for appellants-respondents.

Cooke, J. These are cross appeals from judgments in favor of claimant, entered January 20 and 21, 1970, upon a decision of the Court of Claims.

Claimant owned and operated a 10-story and basement apartment building, known as the Winchester Apartments, in the Bronxville section of Yonkers. Located on a triangular tract of 53,080 square feet fronting on Palmer and Kimball Avenues, with the third side bounded by State lands, the structure contained 120 apartments consisting of over 500 rooms, besides quarters for the superintendent and a porter in the basement. Prior to the appropriations, the property's grade was even with or slightly higher than the level of said streets. The Sprain Brook State Parkway was constructed upon the State's property and, since the project included bridges spanning the Parkway at both Kimball and Palmer Avenues, approaches for the bridges required a change in the grades of these streets.

Claim 36855 involves the appropriation on June 25, 1958 of one permanent easement for the construction and maintenance of a supporting wall footing covering a .025-acre parcel and three temporary construction easements. Claim 37536 involves the appropriation on September 25, 1959 of permanent easements covering a .155-acre parcel and a .045-acre parcel for constructing, reconstructing and maintaining batter piles for the support of walls, one constructed or to be constructed in Kimball Avenue and the other in Palmer Avenue. Claimant contends that in July and August, 1959 permanent batter piles

extended into its realty and that this constituted a *de facto* appropriation.

Claim 37146 alleges negligence in various aspects in the driving and insertion of batter piles into claimant's real property but, by virtue of a prior determination (25 A D 2d 709, affd. 18 N Y 2d 560), it was limited to negligence in design and supervision of the work performed under the pertinent construction contract. Said determination also dismissed claims which alleged trespass on the part of the State.

In its decision, the Court of Claims limited the taking to that portion of the property within the limits of the easements, holding that any encroachment beyond the permanent easements was merely a trespass barred by *res judicata* and that the extent of the protrusion, if any, was vague and indefinite. It held that the taking by the State was not the proximate cause of damage to the subject building, externally or internally, but that the "loss of privacy and quiet, loss of view, light and air, exposure to traffic noise, light and odors" constituted consequential damages to the land and structure, citing *Dennison* v. *State of New York* (22 N Y 2d 409). In computing the appropriation claims damages the Court of Claims found the before value of the premises to be $2,167,802 based on the capitalization of income method and that the economic and physical life of the structure was undamaged by the taking, but that the functional life and marketability of the entire property was damaged 10% consequentially, which was rounded to $213,692, with $30,875 as the value of the permanent easements acquired, making a total award of $244,567 for the acquisition of the permanent easements. The consequential damage was applied equally to both claims. The rental value of the temporary easements was fixed at $1,420 annually, or $118.33 per month, for the period from June 25, 1958 to August 13, 1962, it having been stipulated that these temporary easements terminated on this latter date. Finally, as to the negligence claim, the State was found to be negligent in the design but not in the supervision of the project, it was determined that the building sustained $11,600 "aesthetic damage" as a result of said negligence and it was stated that there was insufficient proof of causation between the negligence and the "cost-to-cure" alleged.

No controversy has been raised concerning the awards for the temporary easements or the direct damages for the permanent easements, the State's brief reciting that there is no dispute and claimant's stating that the $3.50 per square foot value placed upon the land by the court was well within the range of the experts' testimony.

As a general rule, the measure of damages in a partial taking case is the difference between the fair market value of the whole before the taking and the fair market value of the remainder after the taking (*Acme Theatres* v. *State of New York*, 26 N Y 2d 385, 388) and, while one of the surest guides in measuring damages occasioned by such a taking is the diminution in rental value resulting therefrom (*Humble Oil & Refining Co.* v. *State of New York*, 12 N Y 2d 861), the "before and after" process involves two appraisals and, where the highest and best use has not been affected by the taking, both appraisals must be made by identical methods (*Diocese of Buffalo* v. *State of New York*, 24 N Y 2d 320, 326). Having employed the capitalization of income method in evaluating the before taking value, the same should have been employed in establishing the after value and the failure to do so was erroneous. There was no basis for the court's arbitrary deduction of 10% from the before value found, treating the remainder as the after value and holding the difference as the consequential damage. Indeed, claimant's own proof indicates that rents rose subsequent to the takings and comparable figures from claimant's exhibits indicate that net income did in fact increase subsequent to the appropriations.

Not only was there error in computing the consequential damages but, in determining that the entire property was damaged 10% consequentially, the court considered the adverse factors of "the permanent easements, the loss of privacy and quiet, loss of view, light and air, exposure to traffic noise, light and odors", citing *Dennison* v. *State of New York* (22 N Y 2d 409) and *Universal Instruments Corp.* v. *State of New York* (45 Misc 2d 843). While *Universal* supports the view that a permanent easement adversely affects a parcel's marketability, the court's reliance on *Dennison* to support the other elements of consequential damages is inappropriate, since the location of subject property admittedly on two "principal thoroughfares" in Yonkers, was a far cry from the "entirely secluded, quiet and peaceful" setting pictured in *Dennison* (p. 411) nor was this 10-story apartment enterprise in a busy highly populated area a property possessing "the quietude, the tranquility and the privacy" prized and desired in *Dennison* (p. 414). (Cf. *Valicenti* v. *State of New York*, 35 A D 2d 610.)

Even if this prolonged litigation commencing in 1959 and the voluminous record on appeal would permit arriving at an award of consequential damages on a different basis than that employed by the Court of Claims (cf. *Conklin* v. *State of New York*, 22 A D 2d 481, 482–483), the record yields no solace for claimant since the State's appraiser found no consequential

damages and one of claimant's appraisers made the same mistake as the court in using different calculation methods for the before and after values and in setting a 25% damage factor depreciating the building to indicate the consequential damage. The opinion of the second appraiser is without probative force because he offered no supporting data for his change in recapture rates in assessing the before and after values of this property. His opinion therefore is solely subjective.

The trial court held that any protrusion of the batter piles into claimant's subsurface beyond the easement areas resulted from an accident or mistake which was merely a trespass, as such barred by the previous adjudication (25 A D 2d 709, affd. 18 N Y 2d 560, *supra*). Even assuming that the court was wrong in this regard and, further, that there was such a protrusion constituting a *de facto* appropriation after the easements were acquired, there has been no proper proof of direct damages and, in fact, the extent of the claimed *de facto* taking, as admitted in claimant's brief, was "indefinite and uncertain".

In holding the State liable for negligence, the Court of Claims stated: "To be unaware of the soil condition of sub-surface land and of the extent of batter pile support required to buttress a permanent structure to be constructed immediately adjacent to the improvement owned by a claimant is not prudent and reasonable" and that the "planned design, predicated upon a batter pile buttressed permanent structure, which contained a correctable error constitutes negligence". (Cf. *MacKnight Flintic Stone Co.* v. *Mayor of New York,* 160 N. Y. 72, 83.) There was engineering testimony that the design approved would have been satisfactory if it were not for the proximity of the apartment house and that the problem could have been solved by the use of vertical piles for the vertical support and horizontal tie rods running from wall to wall, or caissons could have been installed. Both the State's agreement with an engineering firm for survey, plans, specifications and estimates and subdivision 4 of section 10 of the Highway Law, imposing upon the Superintendent of Public Works the duties of approving and determining the final plans and specifications for State highways, negate the State's contention that it was merely derivatively liable for negligence in construction. Thus, it could not avail itself of the defense of collateral estoppel.

The monetary award of $11,600 for "aesthetic damage" sustained by the building as a consequence of this negligence, however, is unsupportable. There was testimony that the structure was in "perfect" or "excellent" condition prior to the appropriation and execution of the plans and that there were "no

cracks at all '' before the pile driving. This, coupled with proof of the loosening of bricks, drifting of door frames, rupturing of waterproofing in the boiler room, leaks in the boiler and the emergence of cracks inside and outside the building, in the area of and shortly after the driving of piles in the manner outlined, justifies a finding of connection between the batter pile designs and the building fractures (*Fagan* v. *Pathe Ind.*, 274 App. Div. 703, 707–708; cf. *Colmet Realty Corp.* v. *Atwell-Gustin-Morris*, 253 App. Div. 842). There was evidence, relating to said injuries, of the fair and reasonable value and the actual expenditures for restoration: plumbing and heating work in the sum of $3,775.03, roof and exterior wall repairs of $8,323.96, electrical work of $586.50, masonry work of $977.37, cleaning services of $159, locksmith work of $31.75, test hole for boiler room of $265.75 and sewer drain work of $85, the same totaling $14,204.36. (Cf. *Slavin* v. *State of New York*, 152 N. Y. 45, 49.) Recognition is not accorded to alleged painting payments since they were not adequately allocated to this building, nor were they sufficiently differentiated from normal painting requirements. Money spent for landscaping and a terrace fence did not arise out of negligence in design.

Accordingly the $106,846 found as consequential damages in each of claims 36855 and 37536 (thus totaling $213,692 for consequential damage) should be deleted from each respective judgment. The judgment in claim 37146, based on negligence, should be modified to reimburse claimant for repairs attributable to the State's negligence.

Upon the argument of this appeal, the respondents have renewed their motion for reargument of our previous decision relating to the question of interest on the amounts awarded (34 A D 2d 714). Although we adhere to the rationale of our prior decision, we must rescind the decision and vacate the order entered thereon, for procedural reasons, to enable the parties to effect a single appeal to the Court of Appeals, if they be so advised. (See *Bronxville Palmer* v. *State of New York*, 27 N Y 2d 722.)

Upon reargument, the order entered May 5, 1970 should be vacated, and the decision dated April 23, 1970, as it modified the judgments entered January 20, 1970 and January 21, 1970 in the Court of Claims and, as so modified affirmed said judgments, rescinded; and the judgments appealed from modified, on the law and the facts, without costs, so as to reduce the award of $110,276 in claim 36855 to $3,430; the award of $5,873 for rental value of the temporary easements not being disturbed; so as to reduce the award of $134,291 in claim 37536 to

$27,445; and to increase the award of $11,600 in claim 37146 to $14,204.36; and, as so modified, the judgments should be affirmed, with interest in accordance with the decision of the Court of Claims dated September 8, 1969.

REYNOLDS, J. P., STALEY, JR., GREENBLOTT and SWEENEY, JJ., concur.

Upon reargument, order entered May 5, 1970 vacated, and decision dated April 23, 1970, as it modified the judgments entered January 20, 1970 and January 21, 1970 in the Court of Claims and, as so modified affirmed said judgments, rescinded; and judgments appealed from modified, on the law and the facts, without costs, so as to reduce the award of $110,276 in claim 36855 to $3,430; the award of $5,873 for rental value of the temporary easements not being disturbed; so as to reduce the award of $134,291 in claim 37536 to $27,445; and to increase the award of $11,600 in claim 37146 to $14,204.36; and, as so modified, judgments affirmed, with interest in accordance with the decision of the Court of Claims dated September 8, 1969.