[Civ. No. 27477. First Dist., Div. One. Nov. 15, 1971.]

THE PEOPLE EX REL. DEPARTMENT OF PUBLIC WORKS,
Plaintiff and Respondent, v.
VOLUNTEERS OF AMERICA, Defendant and Appellant.

## COUNSEL

Morgan, Beauzay & Hammer and Perry A. Irvine for Defendant and Appellant.

Harry S. Fenton, John P. Horgan, Lee Tyler, William R. Edgar and Robert R. Buell for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—The Volunteers of America, a corporation, the property owner and defendant in an action in eminent domain instituted by the Department of Public Works to acquire certain real property for freeway purposes, including a part of the entire parcel owned by defendant, has appealed from a judgment which granted it $1,365 as the stipulated market value of the portion of the property taken, including the improvements thereon. The appeal is directed to the failure of the judgment to award the property owner claimed severance damages, and particularly attacks the ruling of the trial court which excluded the evidence of severance damages proffered by the property owner in an offer of proof, the finding of the court that the property owner suffered no severance damages, and the conclusion that the sum of $1,365 should be full compensation for the parcel taken and for all damages suffered or to be suffered by the property owner by reason of the taking of the parcel and the construction of the improvement in the manner proposed by the state.

The issues, as framed by the respondent condemner which initiated the proceedings in the trial court by its motion to exclude evidence, are (1)

whether the property owner can recover severance damages when those damages admittedly flow from the construction and use of improvements which are to be physically located on lands acquired from others; and (2) whether, in any event, the property owner can recover severance damages when the alleged diminution in the value of its remaining property is caused by noise emanating from the use of the freeway which would render the premises, as then improved, uninhabitable and unusable.[1]

The property involved is a narrow triangle along the northerly boundary of the parcel owned by the defendant. The property taken measures 82.01 feet along that boundary from the northeasterly corner, 5.89 feet southerly from that corner along the boundary, and then 82.23 feet on a hypotenuse westerly back to the northerly boundary. The area taken is approximately 223 square feet.[2] The parcel before the taking was approximately 125 feet

---

[1] The background of the question presented is well stated in Orgel, Valuation under Eminent Domain (2d ed. 1953) section 54, page 253 et seq., where the author comments on the distinction between damages due and damages not due to the taking of a portion of the owner's property, as follows: "The courts have all recognized that the depreciation in market value of the remainder caused by the physical separation or severance of the part taken is due to the taking and they have held that compensation for this type of injury must be included in damages to the remainder. But they have distinguished these severance damages from the 'consequential' damages arising by reason of the use to which the condemner intends to put the part taken. It is with reference to these so-called consequential damages that the problem of differentiating between damage that is due and damage that is not due to the taking chiefly arises.

"The attempt of the courts to draw this distinction is due to the fact that, with certain exceptions, an owner of property is not entitled to recover for any diminution in value which it may suffer by virtue of the construction and operation of adjacent public works where no part of his property is deemed to have been 'taken.' It would seem, therefore, to be unfair discrimination to reimburse a property owner for all similar damages done to his property simply because a portion of it, however small, may have been condemned. Bearing this point in mind, the courts have attempted, some of them more vigorously than others, to distinguish between damages which a particular owner has suffered *because* a part of his property has been taken, and damages which this same owner may have suffered along with adjacent property owners because public works, detrimental to the remainder of his property, have been located in the neighborhood. Needless to say, there are great difficulties, both practical and theoretical, in making a distinction between these two types of damages, and courts have differed not only in the manner, but also in the zeal, with which they have attempted to draw it." (Fns. omitted.)

See also, 4A Nichols on Eminent Domain (Rev. 3d ed. 1971) § 14.1 at p. 14-5, fn. 4 and accompanying text; and Van Alstyne, *Intangible Detriment* (1969) 16 U.C.L.A. L.Rev. 491, 503-505.

[2] The complaint seeks, in addition to this triangle, the underlying fee interest, if any, appurtenant to the triangle, in and to a 25-foot lane which adjoins the whole parcel on the easterly side and the extinguishment of any right of access the remainder of the whole parcel may have over that lane, as such access will be curtailed by the closing of the lane, as it runs northerly, by the general southerly line of the freeway. No mention of these matters is found in the findings or judgment other than a general reference to the parcel number which included those interests. Whether abandoned, or included in the taking, they are not at issue on this appeal. Although appellant in

from its westerly to its easterly boundary, and 100 feet from its northerly to its southerly boundary, and had a total area of about 12,957 square feet.

The record revealed that the only improvement planned to be located on the property taken would be a fence approximately six inches inside the right of way line for the freeway. It was suggested that by arrangement with the city the city would erect an ornamental fence in connection with a project to put a park under the freeway. The traveled roadway itself would be 23 feet above ground level on an elevated platform 16½ feet above the ground. The traveled portion of the freeway was planned to be located at a distance of 23 feet inside the southerly line of the freeway after the taking, but the structure itself, with allowance for a shoulder, would be 8 feet closer, or 15 feet from the new property line. The structure would be tilted toward and slightly lower to the south.

The defendant's property is located on the northeast corner of two intersecting streets. The improvement which was taken consisted of a shed in the northeasterly corner of the property. It is not a factor in this appeal. The property is also improved by two houses which had been connected for joint use. The foundation line of the northerly rear corner of the northerly house is located about 5 feet from the new freeway right of way line at the closest point. This structure's northerly wall parallels the original northerly property line for about 50 feet at a distance of between 6 and 7 feet. The westerly point of the property taken is opposite a point about half way back from the front of the house. The structure itself overhangs the foundation slightly.

The plaintiff concluded its presentation of the foregoing physical facts on the first day of trial. At the outset of the proceedings on the second day, the following offer of proof was made on behalf of the property owner: ". . . we would offer testimony, (1) that the freeway which is to be constructed, must be considered as a whole . . . as one integral part, and that you cannot separate the portion of the improvement, which is going to be on the land of the defendant Volunteers of America; that the location of the freeway at the point at which it is to be located, including the portion thereof which is on the land of the defendant Volunteers of America, will cause a serious diminution in value to the property of the defendant, approximately $55,000 by way of severance damages; that . . . before the take and before the construction of the improvement, the highest and best

---

its brief has alluded to the fact that the condemnation closes the east alley and the property owner's right to use it to go north from the residue of its property, this element of damage was not mentioned in its offer of proof, and cannot be considered for the first time on appeal.

use of the property, as presently improved, is that of either student housing or of the present use to which it is being made, that is, a home for unwed mothers and women in distress, sort of a boarding house; that after the take and the construction of the improvement proposed by the state, both on the defendant's land and the land of others, the highest and best use of the property will be that of, what would be testified to as low-grade residential or commercial, that is, either one-story duplex or apartment house or one-story commercial use such as a warehouse; that it would be economically impossible for the property to be sold for the erection of multilevel residential use or any other multilevel procedures, any other multiheight use;

"That the sound level which will be created by the erection of the improvement, as proposed by the state, would be such as to make the premises, as presently improved, uninhabitable and unusable; that all of the property of the defendant Volunteers of America is within 118 feet of the location of . . . the freeway proper, that the improvements are considerably closer . . . one hundred eighteen feet, . . . being the furthest distance; that the property, as presently used, real property without improvements, is worth approximately three dollars per square foot; that the property's after use is worth approximately $1.50 per square foot; that the improvements, as presently on the property, would be virtually useless . . . with this freeway located as it is."

It was further stipulated that the physical location of the traveled portion of the freeway would be on the land of others; that no part of the bridge structure would be closer than 9 feet from the existing property line of defendant's property; and that the defendant's witnesses would not be able to testify to severance damages unless they were permitted to testify as to the effect of the freeway on defendant's property.

The court thereupon ruled that the testimony would be excluded. The parties stipulated to the compensation for the property taken. The court ordered judgment accordingly and excused the jury. The defendant unsuccessfully pursued its contention that it should be awarded severance damages by filing objections and proposed counterfindings to those proposed by the condemner, but findings and judgment were entered as ordered by the court, and this appeal ensued.

I

Section 1248 of the Code of Civil Procedure provides in relevant part: "The court, jury, or referee must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:

"1. The value of the property sought to be condemned, and all improvements thereupon pertaining to the realty, and of each and every separate estate or interest therein; if it consists of different parcels, the value of each parcel and each estate or interest therein shall be separately assessed;

"2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff; . . ." This court recently stated, "Accordingly, when a portion of private property consisting of a contiguous parcel of land is condemned for public use under the state's power of eminent domain, compensation is due not only for the value of the land directly taken, but also for so-called severance damages, that is, the damages to the remaining property as the result of its being severed from the part actually taken for public use. [Citations.]" (*People* ex rel. *Dept. Pub. Wks.* v. *Romano* (1971) 18 Cal.App.3d 63, 69 [94 Cal.Rptr. 839].)

■ The condemner, however, relies on the following rule: "An owner, whose land is being condemned in part, may not recover damages in the condemnation action to the remainder of his land caused by the manner in which the works are to be constructed or operated on the lands of others. The detriment for which he may recover compensation is that which will result from the operation of the works upon his land alone. [Citations.]" (*Sanitation Dist. No. 2* v. *Averill* (1935) 8 Cal.App.2d 556, 561 [47 P.2d 786]. See also *People* v. *Symons* (1960) 54 Cal.2d 855, 861 [9 Cal. Rptr. 363, 357 P.2d 451]; *People* ex rel. *Dept. Pub. Wks.* v. *Romano, supra,* 18 Cal.App.3d 63, 69-70; *Lombardy* v. *Peter Kiewit Sons' Co.* (1968) 266 Cal.App.2d 599, 602-603 [72 Cal.Rptr. 240] [app. dism. 394 U.S. 813 (22 L.Ed.2d 748, 89 S.Ct. 1486)]; *People* ex rel. *Dept. of Public Works* v. *Wasserman* (1966) 240 Cal.App.2d 716, 723-726 and 732 [50 Cal.Rptr. 95]; *People* ex rel. *Dept. Pub. Wks.* v. *Elsmore* (1964) 229 Cal. App.2d 809, 811 [40 Cal.Rptr. 613] [disapproved in *People* ex rel. *Dept. Pub. Wks.* v. *Ramos* (1969) 1 Cal.3d 261, 264, fn. 2 [81 Cal.Rptr. 792, 460 P.2d 992], as discussed below]; *City of Berkeley* v. *Von Adelung* (1963) 214 Cal.App.2d 791, 793 [29 Cal.Rptr. 802]; 4A Nichols, Eminent Domain (Rev. 3d ed. 1971) § 14.1[1], p. 14-6 et seq., § 14.21[1], p. 14-53 et seq. and § 14.2462, fns. 6-10, and accompanying text, pp. 14-276/14-278; 1 Orgel, Valuation Under Eminent Domain, §§ 56-57, pp. 257-266; and Van Alstyne, *Intangible Detriment* (1969) 16 U.C.L.A. L.Rev. 491, 504, fn. 51, and accompanying text.)

The *Symons* rule does not apply in two other situations. If the construction or use of the improvement on public property causes tangible damage

to, or affects an established right of access to adjoining property, there may be compensable damage. (See *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 256-264 [42 Cal.Rptr. 89, 398 P.2d 129]; *House* v. *L.A. County Flood Control Dist.* (1944) 25 Cal.2d 384, 392 [153 P.2d 950]; *Bacich* v. *Board of Control* (1943) 23 Cal.2d 343, 349-352 [144 P.2d 818]; *Eachus* v. *Los Angeles etc. Ry. Co.* (1894) 103 Cal. 614, 617-622 [37 P. 750]; and *Reardon* v. *San Francisco* (1885) 66 Cal. 492, 505-506 [6 P. 317].) Under such circumstances, where there is a special detriment to the private land involved, it should be immaterial whether the works which caused the damage were wholly, or partially, or in no way upon some land which was taken from the private owner.

In the second place, since the trial of this case, it has been recognized that even though the roadbed, or paved portion of a freeway is not on the property taken, if the strip taken is a part of the freeway right of way, the rule of *People* v. *Symons, supra,* does not apply. In *Symons* the court ruled that an owner, whose property was taken for purposes other than the construction of the freeway itself, was not entitled to compensation, or severance damages, for those impediments to the property resulting from the objectionable features caused by the maintenance and operation of the freeway proper on lands other than those taken from the defendants. (54 Cal.2d at pp. 860-862. See also *People* ex rel. *Dept. Pub Wks.* v. *Elsmore, supra,* 229 Cal.App.2d 809, 811.) In *Symons* the property condemned was for the enlargement of a turnaround for a cul-de-sac necessitated by but not a part of the freeway project, and the property owners sought as severance damages "the decreased value of their property arising from such factors, among others, as the change from a quiet residential area, loss of privacy, loss of view to the east, noise, fumes and dust from the freeway, loss of access over the area now occupied by the freeway, and misorientation of the house on its lot after the freeway construction." (54 Cal.2d p. 858. See also *People* ex rel. *Dept. of Public Works* v. *Wasserman, supra,* 240 Cal.App.2d 716, 723-727.) In *Elsmore,* as in this case, the land taken was not to be used for the construction of the roadway itself. The opinion recites: "The only improvement to be constructed on the land taken from appellants is a chain link fence to be placed on or near the property line separating the state-acquired property from the remainder of Parcel 2. The part of Parcel 2 acquired by the state was taken for freeway purposes but not for the construction of the freeway proper. It is to be a portion of an unimproved and cleared strip about 25-30 feet wide located to the side of the freeway roadbed. This cleared strip, designed to run along the entire length of the freeway from San Jose to San Francisco, is to be used only for emergency and maintenance vehicles and operations. All of the land taken from appellants is included within this proposed road-

side strip." (229 Cal.App.2d at p. 810.) The trial court properly applied *Elsmore* to the facts before it in this case.[3]

Thereafter in *People* ex rel. *Dept. Pub. Wks.* v. *Ramos* (1969) 1 Cal.3d 261 [81 Cal.Rptr. 792, 460 P.2d 992], the court overruled a judgment denying severance damages in a situation where the property taken was not used for the paved portion of the freeway. In distinguishing *Symons* the court said, "In the present case however, Parcel 3-A of the defendants' property was taken for use as a part of the freeway itself, and the chain link fence was constructed on it. Although Parcel 3-A was not used for the paved portion of the freeway, but for a dirt strip or shoulder paralleling the traffic lanes, it was taken as a part of the freeway right-of-way, and the fence was placed on it to act as a physical barrier to the limited access freeway. Accordingly, the rule of the *Symons* case is not applicable, and the trial court's contrary ruling was in error." (1 Cal.3d at p. 264, fn. omitted.) In a footnote the court stated, "Any implications found in *People* ex rel. *Dept. of Public Works* v. *Elsmore* (1964) 229 Cal.App.2d 809 . . . , contrary to the views we express today must be deemed disapproved." (*Id.*, fn. 2.)

It is therefore concluded that the condemner cannot rely upon the rule of the *Averill* case when, as here, the property taken is an integral part of the right of way upon which the improvement is to be constructed, maintained and used. It is urged that *Ramos* should be limited to its facts, that is, since the fence which deprived the property owner of access was erected on property taken from him, the test of *Averill* was satisfied. On the other hand, the authority under which the property was taken in this case was allegedly and admittedly "For Freeway purposes." The condemner could have placed its freeway 6 feet northerly and avoided taking any of defendant's property. It did not, and having found his property necessary for the project, it should be bound by the general rules concerning severance damages.[4]

---

[3]At the time of its decision, May 5, 1969, and the entry of judgment, June 11, 1969, the trial court was also relying on the opinion of the Court of Appeal for the Fifth District in *People* ex rel. *Department of Public Works* v. *Ramos,* Civ. No. 1035, decided April 18, 1969 (77 Cal.Rptr. 130). In that opinion the court reluctantly followed *Elsmore.* Its challenge was accepted, and the opinion was vacated when the Supreme Court granted a hearing June 18, 1969, a week after the entry of judgment in this case.

[4]In *Andrews* v. *Cox* (1942) 129 Conn. 475 [29 A.2d 587], a small triangle appraised at $9 was taken. Damages amounting to $1,700 were also suffered by reason of the highway construction not only on the land taken but also upon the adjoining lands not belonging to the property owner. The court ruled it was error *to fail to*

As will be noted below, the dividing line between those who are entitled to consequential damages, and those who are not, is at best arbitrary. On the one hand it can be said that certain diminution of the value of its property resulting to the defendant is no greater than that suffered by neighboring property owners who lost no land by reason of the improvement (see below). By the same token this diminution of value is just as great as that suffered by a landowner who retains an equivalent parcel after giving up a strip of greater width which falls under part or all of the projected improvement. It is concluded that the court erred insofar as it denied the defendant an opportunity to show the diminution in the value of its remaining property which would be occasioned by the construction and operation of the freeway in the manner proposed by plaintiff on the ground that the property taken from plaintiff did not extend under the roadway itself.

---

allow the latter sum. It said, "The element of cause and effect is present in any award for depreciation in the value of the remaining land due to use of the land taken for the making of the improvement; damages of that kind are given because they are caused by the use of the land taken; and where the making of the improvement requires as an integral and inseparable part the use of the land taken, though the improvement as a whole extends to adjoining land, that use is a contributing cause of the effect produced by the entire improvement." (129 Conn. at p. 481 [29 A.2d at p. 590]. See also *Hollister* v. *Cox* (1943) 130 Conn. 389, 393-394 [34 A.2d 633, 634]; *Chicago, K. & N. Ry. Co.* v. *Van Cleave* (1893) 52 Kan. 665, 667-669 [33 P. 472, 473-474], app. dism. 41 L.Ed. 1177, 17 S.Ct. 992; and cf. *De Vore* v. *State Highway Commission* (1936) 143 Kan. 470, 472-474 [54 P.2d 971, 972-973]; *City of Crookston* v. *Erickson* (1955) 244 Minn. 321, 325-328 [69 N.W.2d 909, 912-914]; and cf. *Thomsen* v. *State* (1969) 284 Minn. 468, 472-476 [170 N.W.2d 575, 579-581]; *State Highway Commission* v. *Bloom* (1958) 77 S.D. 452, 461-462 [93 N.W.2d 572, 577-578, 77 A.L.R.2d 533]; *Dennison* v. *State* (1968) 22 N.Y.2d 409, 413 [293 N.Y.S.2d 68, 71, 239 N.E.2d 708, 710]; and *Purchase Hills Realty Associates* v. *State* (1970) 35 App.Div.2d 78, 81-82 [312 N.Y.S.2d 934, 937-938]; and *Bronville Palmer, Ltd.* v. *State* (1971) 36 App.Div.2d 10 [318 N.Y.S.2d 57, 61].)

*Andrews* v. *Cox, supra; Chicago, K. & N. Ry. Co.* v. *Van Cleave, supra;* and *City of Crookston* v. *Erickson, supra,* were all distinguished in *People* ex rel. *Dept. Pub. Wks.* v. *Elsmore, supra,* (see 229 Cal.App.2d at pp. 811 and 813) because, as to the first two cases, the court in *Elsmore* believed "the damages to the remainder attributable to the taking and use of appellants' land acquired are readily severable from the overall damages caused by the entire 200-foot freeway strip and thus can be determined." This distribution is understandable if the strip were an addition to the existing freeway. The situation was then one in which the property owner's property line was moved back from the roadway, with no change in the relationship between the objectionable features and the residue of the property. (Cf. *People* v. *O'Connor* (1939) 31 Cal.App.2d 157, 159 [87 P.2d 702].) The distinction is questionable when, as in this case, a new freeway of prescribed dimensions is partly interposed on the claimant's property. Although, as pointed out in *Elsmore,* the *Erickson* case does refer to the fact that the property owner cannot, as in this state, recover in the future for additional damage occasioned by further improvements on the property acquired, the court in *Erickson* did follow *Andrews* v. *Cox, supra,* insofar as it indicates that any taking is sufficient to give rise to a right to consequential damages.

## II

The property owner relies upon the general rule for ascertaining severance damages which is stated in *People* v. *Loop* (1954) 127 Cal.App.2d 786 [274 P.2d 885], as follows: "Severance damages are determined by ascertaining the market value of the property not taken as it was on the date fixed for determining such damages, and by deducting therefrom the market value of such remaining property after the severance of the part taken and the construction of the improvement in the manner proposed by the plaintiff. [Citation.] Severance damages may be shown by proving the market value of the remainder before and after taking and leaving the computation of the difference to the jury, or by competent evidence of severance damages in a lump sum." (127 Cal.App.2d at p. 799. See also *San Bernardino County Flood Control Dist.* v. *Sweet* (1967) 255 Cal.App. 2d 889, 904 [63 Cal.Rptr. 640]; 4A Nichols, *op cit.*, §§ 14.23, 14.231, 14.232 and 14.232[1], pp. 14-76 et seq.; and 1 Orgel, *op. cit.*, §§ 50, 51, pp. 234-236.) It claims it was entitled to show that the remaining property would be depreciated 50 percent by the construction, maintenance and use of the freeway.

■ "The constitution does not . . . authorize a remedy for every diminution in the value of property that is caused by a public improvement. The damage for which compensation is to be made is a damage to the property itself, and does not include a mere infringement of the owner's personal pleasure or enjoyment. Merely rendering private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage contemplated by the constitution; but the property itself must suffer some diminution in substance, or be rendered intrinsically less valuable by reason of the public use. The erection of a county jail or a county hospital may impair the comfort or pleasure of the residents in that vicinity, and to that extent render the property less desirable, and even less salable, but this is not an injury to the property itself so much as an influence affecting its use for certain purposes; but whenever the enjoyment by the plaintiff of some right in reference to his property is interfered with, and thereby the property itself is made intrinsically less valuable, he has suffered a damage for which he is entitled to compensation." (*Eachus* v. *Los Angeles etc. Ry. Co., supra,* 103 Cal. 614, 617. See also *People* v. *Symons, supra,* 54 Cal.2d 855, 858-859; *City of Oakland* v. *Nutter* (1970) 13 Cal.App.3d 752, 769 [92 Cal. Rptr. 347]; *Lombardy* v. *Peter Kiewit Sons' Co., supra,* 266 Cal.App.2d 599, 603; *People* ex rel. *Dept. of Pub. Wks.* v. *Presley* (1966) 239 Cal.App. 2d 309, 312 [48 Cal.Rptr. 672]; *People* ex rel. *Dept. Pub. Wks.* v. *Elsmore, supra,* 229 Cal.App.2d 809, 811; and *City of Berkeley* v. *Von Adelung, supra,* 214 Cal.App.2d 791, 793.)

That the value of the remainder before and after the construction of the improvement in the manner proposed is not a conclusive test is demonstrated by *People* v. *Gianni* (1933) 130 Cal.App. 584 [20 P.2d 87]. There a small portion of the property was taken, and the value of the remainder was diminished by reason of the relocation of the highway. In denying recovery for the latter loss the court observed, "We might concede the claim that a test of damage is the value of the property before the taking and its value thereafter. But this test is not conclusive. By way of illustration, it cannot be denied that in a vast majority of cases a development of new territory reacts to the damage of established districts. Almost every large city demonstrates a decrease in realty values consequent upon a branching out of business and population. To apply the test of values, before and after, in those cases would be beyond any notion of law or reason. [Citation.]" (130 Cal.App. at p. 587.)

■ The question here is whether the property owner, on a proper showing, is entitled to recover for the diminution of the value of the remainder which is occasioned solely by the fact that the sound level which will be created will render the premises, as presently improved, uninhabitable and unusable, will reduce the highest and best use of the property from multiple housing to low grade residential or commercial, and will depreciate its value from $3 to $1.50 per square foot. A learned commentator has said, "It is clear . . . that if the project responsible for the claimed proximity damage [defined as vehicular noise, fumes, dust, glare, and loss of light or view—the incident and intensity of which are dependent upon proximity to the highway] is constructed upon land taken from the claimant, his recovery of severance damages to the remainder of the parcel may include losses caused by increased noise, dust and fumes, as well as interference with air, light, and view, unfavorable consequences of the project which would be taken into account by an informed potential purchaser.

"The cutting edge of the prevailing rules of proximity damages is not the logic of distance but the accident of location of the injury-producing activity upon land taken from the claimant. If no part of the claimant's land has been taken for the project, though it be immediately adjoining, he must suffer resulting proximity losses without recourse; but if a partial taking occurs, however slight, those losses are compensable as severance damages. Concededly of rough utility, this rule of thumb—like the 'next-intersecting-street' rule applied in cul-de-sac cases—manifestly yields indefensible results in a significant number of specific cases." (Van Alstyne, *op. cit.*, U.C.L.A. L.Rev., at pp. 504-505, fns. omitted.)

The cases do not reveal the clarity which the commentator professes.

In *Pierpont Inn, Inc.* v. *State of California* (1969) 70 Cal.2d 282 [74 Cal.Rptr. 521, 449 P.2d 737], the court adopted the following statement from the vacated decision of the Court of Appeal, "Where the property taken constitutes only a part of a larger parcel, the owner is entitled to recover, inter alia, the difference in the fair market value of his property in its 'before' condition and the fair market value of the remaining portion thereof after the construction of the improvement on the portion taken. Items such as view, access to beach property, *freedom from noise*, etc. are unquestionably matters which a willing buyer in the open market would consider in determining the price he would pay for any given piece of real property. Concededly such advantages are not absolute rights, but to the extent that the reasonable expectation of their continuance is destroyed by the construction placed upon the part taken, the owner suffers damages for which compensation must be paid." (70 Cal.2d at p. 295, italics added. Cf. 68 Cal.Rptr. at p. 243.) There is nothing in the opinion as adopted and republished (*id.,* at p. 284, fn. 1), to indicate that "freedom from noise" of the traffic was an element considered in determining severance damages. The remarks were addressed to the following question: "Appellant contends that the trial court erred in permitting the jury to consider the property's loss of view and relatively unrestricted access to the beach in determining severance damages." (*Id.,* pp. 294-295.) The court did approve damages for the period of construction "when heavy equipment, including pile drivers, were creating noise, dust and disturbing vibrations that affected its remaining property. . . ." (*Id.,* p. 300.) This is a thin reed upon which to float recovery of severance (consequential) damages (see 4A Nichols, *op. cit.,* § 14.1[3], pp. 14-31/14-35) for prospective traffic noise alone. In *Symons,* cited by the commentator and by the court in *Pierpont,* the court stated, "It is established that when a public improvement is made on property adjoining that of one who claims to be damaged by such general factors as change of neighborhood, *noise,* dust, change of view, diminished access and other factors similar to the damages claimed in the instant case, there can be no recovery where there has been no actual taking or severance of the claimant's property. [Citations.]" (54 Cal.2d at p. 860, italics added.) The reference to noise is acknowledgedly dictum.

*Symons* (54 Cal.2d at p. 859), and *Pierpont* (in quoting it without credit) (70 Cal.2d at p. 295; and cf. 68 Cal.Rptr. at p. 243) do give vitality to *People* v. *O'Connor* (1939) 31 Cal.App.2d 157 [87 P.2d 702], a case in which the state took a 10-foot strip of land along the front of the defendant's property for the purpose of widening an existing highway. In *O'Connor* the jury awarded, and the judgment provided for, an award of $35 for the parcel taken, and $1,500 severance damages. The condemner

contended that the court erred in denying its motion to strike all of the testimony of defendant's two valuation witnesses as to severance damages because it was based on speculative, remote and conjectural elements of damage. According to the opinion: "Both of them, after giving their opinions as to the severance damage, stated that said opinions were based on the fact that the widening of the highway right of way would decrease the distance from the house to the right of way line from 37 to 27 feet; that the lawn and landscaping in front of the house would be adversely affected; that the highway being slightly raised, would be more difficult of access, and ingress and egress to and from the premises would be more difficult; and that the increased closeness of the highway would increase *traffic noises and hazards.*" (31 Cal.App.2d at p. 159, italics added.) The court concluded, "All of the matters mentioned were proper reasons to be advanced by the experts as bases for their opinions as to value, and the jury could determine what weight to give the opinions in proportion to the weight the reasons had with them." (*Id.*) The question of whether the 10-foot strip would be used for the traveled portion of the highway or for a shoulder (see part I above) was not raised. It is obvious, however, that even if the 10-foot strip was used for one lane of traffic it would be impossible to disassociate the traffic noises emanating from that lane, from those occasioned by the overall traffic. *O'Connor* was also recognized and followed by this court in *City of Oakland* v. *Nutter, supra,* 13 Cal.App.3d 752, where it was concluded "that the court properly permitted evidence of the effect on the value of the subjacent land of excessive noise, vibration, discomfort, inconvenience and interference with the use and enjoyment of that land as such factors were occasioned by flights through the easement condemned." (13 Cal.App.3d at p. 772.) In *Nutter,* however, it was clear that consideration was limited to damages arising by use of the airspace actually condemned (see part I above).

Support for the property owner's view is also found in *Pacific Gas & Elec. Co.* v. *Hufford* (1957) 49 Cal.2d 545 [319 P.2d 1033], where among the approved elements considered in determining the diminution in value to the remaining property occasioned by the taking of an easement for the construction, operation and maintenance of an electric transmission line, was the fact that cattle would not gain weight for quite a while under a power line because the noise (buzzing) would disturb them and they would not bed down under it. (49 Cal.2d at p. 559. See also *Sacramento, etc. Drainage Dist.* ex rel. *State Reclamation Bd.* v. *Reed* (1963) 215 Cal. App.2d 60, 71 [29 Cal.Rptr. 847].)

In *City of Pleasant Hill* v. *First Baptist Church* (1969) 1 Cal.App.3d 384 [82 Cal.Rptr. 1], the condemner complained because "there were re-

peated references to noise and distraction and inconvenience caused by having the public street in front of the church." (1 Cal.App.3d at p. 435.) This court observed, referring to *Pierpont* and *Symons,* "The evidence was properly admitted and alluded to, not because it showed elements which interfered with the condemnee-church's particular pleasure or enjoyment, or because it showed the church property was subjected to detrimental factors which were common to all properties in the neighborhood, but because the matters adduced were proper elements to be considered in determining the value of the remainder of the property of which the city had taken a portion. [Citations.]" (*Id.*)

On the other hand, it appears in *People* ex rel. *Dept. of Pub. Wks.* v. *Presley, supra,* that a portion of the property owners' property was condemned, that is, the fee of so much of their parcel as underlay an existing street, and their right of access to that street. The trial court refused to include in the damages any compensation for the increased noise, fumes and annoyance which would result from the more heavily trafficked freeway, or any compensation for the loss of the parking privileges which they had enjoyed on the former street. The court stated, ". . . consideration of the problem in terms of whether the damage suffered is unique to the condemnee or only that which he shares in general with the rest of the traveling public is one of the more vital factors which aid in reaching a solution of the question . . . ." (239 Cal.App.2d at p. 314.) With respect to the damages claimed for the increased traffic, the court followed *City of Berkeley* v. *Von Adelung, supra.* (*Id.,* at p. 317.) In *Von Adelung* a portion of the property owners' property was taken to round off a corner of the existing street which was being improved to make it a major thoroughfare. His efforts to prove that the value of the remainder would be depreciated by the increased fumes and traffic noises was rejected. In affirming the court opined, as an alternative ground of decision, ". . . the asserted injury is not conpensable because it is general to all property owners in the neighborhood, and not special to defendant [citation]." (214 Cal. App.2d at p. 793.)

Although a hearing in the Supreme Court was not requested in either of the foregoing cases, they demonstrate that there may be some question whether elements of damage which are "general to all property owners in the neighborhood, and not special to the defendant" may be recovered even if some property is taken. The principle relates back to the issue of determining the line of demarcation between a proper exercise of the police power, through routing and controlling traffic, and an invasion of private rights (see fn. 1, *supra*). In *Albers* v. *County of Los Angeles, supra,* 62 Cal. 2d 250, the governing principles, as expounded in earlier cases, were re-

viewed as follows: "This court in considering a similar policy question in *Clement* v. *State Reclamation Board, supra,* said at 35 Cal.2d 628, 642 [226 P.2d 897]: 'The decisive consideration is whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking.' In the concurring opinion of Traynor, J., in *House* v. *Los Angeles County Flood Dist., supra,* 25 Cal.2d 384, 397, the same statement is followed by the language: 'It is irrelevant whether or not the injury to the property is accompanied by a corresponding benefit to the public purpose to which the improvement is dedicated, since the measure of liability is not the benefit derived from the property but the loss to the owner.'

"The competing principles are stated in *Bacich* v. *Board of Control, supra,* 23 Cal.2d 343, 350: 'It may be suggested that on the one hand the policy underlying the eminent domain provision in the Constitution is to distribute throughout the community the loss inflicted upon the individual by the making of the public improvements. . . . On the other hand, fears have been expressed that compensation allowed too liberally will seriously impede, if not stop, beneficial public improvements because of the greatly increased cost.' " (62 Cal.2d at pp. 262-263.)

The case for denial of consequential damages occasioned by reason of fumes, noise, dust, shocks and vibrations incident to the operation of a freeway is most forcefully stated in *Lombardy* v. *Peter Kiewit Sons' Co., supra,* an action however in which no property was taken. The court said: "The mental, physical and emotional distress allegedly suffered by plaintiffs by reason of the fumes, noise, dust, shocks and vibrations incident to the construction and operation of the freeway does not constitute the deprivation of or damage to the property or property rights of plaintiffs for which they are entitled to be compensated." (266 Cal.App.2d at p. 603.) Subsequently in considering whether there a nuisance was created, the opinion states, "All householders who live in the vicinity of crowded freeways, highways and city streets suffer in like manner and in varying degrees. The roar of automobiles and trucks, the shock of hearing screeching brakes and collisions, and the smoke and fumes which are in proportion to the density of the motor vehicle traffic all contribute to the loss of peace and quiet which our forefathers enjoyed before the invention of the gas engine. . . . [¶] The conditions of which appellants complain are obnoxious to all persons who live in close proximity to the state's freeways but they must be endured without redress." (*Id.,* at p. 605.)

*Lombardy* can, of course, be readily distinguished from this case because no property was taken. *Presley* and *Von Adelung* may be, and have been distinguished, because in each case it was only the enlargement of an

existing public use which occasioned the factors which allegedly resulted in the diminution of the value of the property. An even broader distinction may be drawn between the improvement of an existing street and the re-routing of traffic (*City of Berkeley* v. *Von Adelung, supra*; and see *People* v. *Avon* (1960) 54 Cal.2d 217, 223-224 [5 Cal.Rptr. 151, 352 P.2d 519]), and the creation of a freeway, particularly when the latter is not patterned on an existing street (*People* ex rel. *Dept. of Pub. Wks.* v. *Presley, supra*) but is carved anew through established neighborhoods. The property owner properly may be charged with knowledge that traffic patterns may be upset by traffic regulations and the establishment of ordinary thoroughfares which control the local flow of traffic. In such a case he may have to anticipate growth and increased use of existing facilities which necessitate their improvement, or the substitution of new thoroughfares. It is quite another thing to say that he should suffer comparable, but probably more inconvenience and loss in property value, because the public elects to put a non-accessible freeway over or next to his property to accommodate the flow of traffic from community to community, or from one center of population or trade to another, without any regard for the needs of his neighborhood. In the latter case the consequential damages are more akin to that caused by railroads and airports, and commensurate principles should apply.[5] It is difficult to justify principles of law which permit consideration of the well being of Mr. and Mrs. Causby's chickens (see *United States* v. *Causby* (1946) 328 U.S. 256, 259 [90 L.Ed. 1206, 1209, 66 S.Ct. 1062]), and the Hufford's cows (see *Pacific Gas & Elec. Co.* v. *Hufford, supra*, 49 Cal. 2d 545, 549), but refuse to permit consideration of the mental, physical and emotional distress of the present and prospective occupants of defendant's residences, insofar as that distress, and the noise which occasions it, is reflected in a diminution of the value of the property.

It has already been pointed out that the test of whether the property taken is used for the portion of the project giving rise to the detrimental conditions is an arbitrary one (see part I above). It is also obvious that adjacent property is damaged to the same degree by the detrimental factors of a freeway

---

[5]In *City of Yakima* v. *Dahlin* (1971) 5 Wn.App. 129 [485 P.2d 628] the analogy to overflights was applied to the diminution in property value caused to a particular parcel from noise occasioned by the manner of construction of a freeway ramp even though no property was taken. Other jurisdictions, however, have refused to recognize noise and other inconveniences caused by traffic as an element to be considered in determining damage. (See *Northcutt* v. *State Road Department* (Fla. App. 1968) 209 So.2d 710, 711; *State* v. *Galeener* (Mo. 1966) 402 S.W.2d 336, 340; and *Arkansas State Highway Commission* v. *Kesner* (1965) 239 Ark. 270, 273 [388 S.W.2d 905, 908], but note *Arkansas State Highway Commission* v. *Kennedy* (1970) 248 Ark. 301, 307 and 309, fn. 1 [451 S.W.2d 745, 748 and 749, fn. 1] in which both majority and dissenting opinions suggested reconsideration of the rule.)

whether no property is taken,[6] whether a mere narrow strip is taken, or whether a substantial portion of the property is taken for the construction of the improvement. (See Van Alstyne, *op.cit.*, 16 U.C.L.A. L.Rev., at pp. 503-505.) Until such time as provision is made for compensation of those who are merely adjacent (see *id.*, at pp. 517-518; and *Andrews* v. *Cox* (1942) 129 Conn. 475, 478 [29 A.2d 587, 588-589]), they presumably may not recover proximity damages. Two wrongs do not make a right. Though illogical, the taking of the strip warrants the allowance of consequential damages under existing precedents. The trial court erred in refusing to receive the evidence proffered by the property owner.

In *Bacich* v. *Board of Control* (1943) 23 Cal.2d 343 [144 P.2d 818], former Chief Justice Traynor, then an associate justice, in dissenting observed, "The cost of making such improvements may be prohibitive now that new rights are created for owners of property abutting on streets that would be at right angles to the improvements, for these rights must be condemned or ways constructed over or under the improvements. The construction of improvements is bound to be discouraged by the multitude of claims that would arise, the costs of negotiation with claimants or of litigation, and the amounts that claimants might recover. Such claims could only be met by public revenues that would otherwise be expended on the further development and improvement of streets and highways." (23 Cal.2d at p. 380.) Here the right recognized, although not clearly established, is not a new right. In any event, with changing concepts of the rights of an individual to his privacy and to enjoy an environment unpolluted by noise, dust, and fumes, it may not be improper to consider whether other means of transportation should be substituted for the private automobile. Any consideration of this question is clouded if the true economic burden of providing freeways for motor vehicle traffic is concealed by requiring adjacent owners to contribute more than their proper share to the public undertaking. If there is, as in this case, warrant for the compensation of such an owner, because a portion of his property has been taken, it should be granted if established by proper proof.

The judgment is reversed.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied December 14, 1971, and respondent's petition for a hearing by the Supreme Court was denied January 13, 1972.

---

[6]There is some precedent for recovery of damages peculiar to the adjacent property, even when no property is taken. (See *United States* v. *Certain Parcels of Land in Kent County, Mich.* (W.D.Mich. 1966) 252 F.Supp. 319, 323; *City of Yakima* v. *Dahlin* (1971) 5 Wn.App. 129 [485 P.2d 628, 630]; and *Bd. of Ed. of Morristown* v. *Palmer* (1965) 88 N.J. Super. 378 [212 A.2d 564, 568-571], revd. as premature (1966) 46 N.J. 522 [218 A.2d 153].)