22 Cal.App.3d 829 (1972)
99 Cal. Rptr. 836
THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent,
v.
INTERNATIONAL TELEPHONE & TELEGRAPH CORPORATION, Defendant and Appellant.
Docket No. 28149.
Court of Appeals of California, First District, Division Three.
January 13, 1972.
*832 COUNSEL
Fadem & Kanner and Gideon Kanner for Defendant and Appellant.
Harry S. Fenton, John P. Horgan, Lee Tyler, William J. Turner, William R. Edgar and Robert R. Buell for Plaintiff and Respondent.
OPINION
CALDECOTT, J.
Respondent, Department of Public Works, filed a complaint in eminent domain against appellant ITT (also referred to in the pleadings as ITT-Jennings), seeking to condemn for a freeway a portion of land owned by ITT. ITT filed an answer, requesting just compensation for the land taken, and for severance damages for the damage to be caused by the public improvement. Before commencement of the jury trial, the trial court ruled that evidence as to any severance damages would be limited to one of ITT's two parcels involved (the agricultural parcel), and that no evidence could be considered as to severance damages with regard to the other parcel (the plant parcel). The appeal is from the judgment.
Since 1942 defendant-appellant ITT-Jennings has owned and operated an electronics plant located on a 20-acre parcel in Santa Clara County. Adjacent to this parcel, on one side of the property, lies an 18-acre parcel which has been used for many years mostly for growing vegetables. This property was originally owned and farmed by one Reno Mazzanti.
In the summer of 1962, the Department of Public Works announced plans for an extension of Interstate Route 280 near the location of the electronics plant; the proposed route was to pass mostly over the agricultural property, and would have also required the taking of a small part of the ITT plant's parking area. After repeated urging by ITT, the Highway Commission moved the freeway route farther away from the plant. This new route would cross the northern half of the agricultural parcel, and would not require the taking of any of ITT's land.
ITT then proceeded to purchase the agricultural parcel over which it knew the freeway would pass. After the purchase, in April 1963, ITT leased back the land to Mazzanti for his continued use for farming. The lease to Mazzanti was renewed annually, and at the time of the trial, Mazzanti was still farming the property under a one-year lease with options for three additional years. No part of the agricultural parcel has ever been used *833 for any purpose connected with the ITT plant, and the parcels are separated by a high fence topped with barbed wire.
When the state brought its action to acquire the portion of the agricultural property required for the freeway, ITT claimed severance damages to its plant. It was claimed that the construction and operation of the freeway on the agricultural property would necessitate the installation of additional air filtration equipment at a cost of one million dollars over a five-year period.[1]
Prior to the jury trial on the issue of damages, the trial court ruled that because of the complete dissimilarity of the uses to which the plant and agricultural parcels had been put, the ITT plant parcel could not, as a matter of law, be included for the purpose of assessing severance damages.
(1a) The basic issue presented on appeal is whether the trial court was correct in ruling that appellant's plant parcel and the adjacent agricultural parcel did not constitute a single "larger parcel" for the purpose of assessing severance damages.
(2) Code of Civil Procedure section 1248, subdivision 2, the statutory authority for awarding severance damages, provides in part as follows: "The court, jury, or referee must hear such legal testimony as may be offered by any of the parties to the proceeding, and thereupon must ascertain and assess: ...
"2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff." The words of this statute plainly indicate that in order to recover severance damages, the property sought to be condemned must constitute a part of a "larger parcel." The determination as to what constitutes a "larger parcel" under the terms of this statute is essentially a question of law for the determination of the trial court. (Oakland v. Pacific Coast Lumber etc. Co. (1915) 171 Cal. 392, 397 [153 P. 705]; People ex rel. Dept. Pub. Wks. v. Nyrin (1967) 256 Cal. App.2d 288, 294 [63 Cal. Rptr. 905].)
The trial court determined as a matter of law that the plant property was not a part of the "larger parcel," and that the "larger parcel" included only *834 the agricultural property for purposes of assessing severance damages. Consequently, the court limited the question of severance damages to the agricultural parcel.
(3) The well established and consistently applied rule in California states that to recover severance damages there must be a unity of title, contiguity and unity of use. (City of Los Angeles v. Wolfe (1971) 6 Cal.3d 326 [99 Cal. Rptr. 21, 491 P.2d 813]; City of Menlo Park v. Artino, 151 Cal. App.2d 261, 270 [311 P.2d 135]; City of Stockton v. Marengo, 137 Cal. App. 760, 766 [31 P.2d 467]; People ex rel. Dept. Public Works v. Dickinson, 230 Cal. App.2d 932, 934 [41 Cal. Rptr. 427].) (1b) There is no problem here as to the presence of the first two requirements. The controversy centers on the third requirement.
There was ample evidence to support the court's findings of fact with regard to the use of the property. In part, the court found: "Defendant ITT-Jennings and its predecessor in interest have used the plant property for manufacturing purposes since 1942 and the agricultural property has been used for agricultural purposes up to the present time. The uses being made of the two properties are unrelated and markedly different. There is [a] long-standing chain link fence separating the agricultural property from the plant property. The agricultural property is zoned for residential use and the plant property is zoned for industrial use."
Appellant relies heavily on People v. Thompson, 43 Cal.2d 13 [271 P.2d 507]. In Thompson, the court contrasted the facts of Thompson with those of the City of Stockton v. Marengo, supra. As the court stated, "... In the Marengo case the main tract was used by defendants for the purpose of farming, while the lot which was held not to be part of the tract for severance damage purposes was separated from the larger tract by a fence and was occupied by and used by a gas station.... By contrast, there is in the present case [Thompson] no actual diversity or division of use, but simply a failure to use some of the property." The facts of Marengo are almost identical with the present case, substituting an electronics plant for the gas station.
Appellant contends that the use of the agricultural property is related to the use of the plant property, in that the agricultural parcel was purchased for the purpose of providing a buffer between the plant and the surrounding area, so as to insulate or isolate the plant from contaminating influences of the surrounding area. The trial court properly found this was insufficient to constitute unity of use. Here there actually are two definite, separate, and independent uses of the parcels; one was used for an electronics plant, the other was used for growing vegetables.
*835 (4) As stated in City of Stockton v. Marengo, supra, 137 Cal. App. 760, 766, "To constitute a unity of property between two or more contiguous but prima facie distinct parcels of land, there must be such a connection or relation of adaptation, convenience, and actual and permanent use as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left...."
(1c) It cannot be said that there was any actual use made of the agricultural parcel that was reasonably and substantially necessary for the operation of an electronics plant. Appellant's claim that the agricultural parcel was purchased for the purpose of providing a buffer is to some extent defeated by testimony that the agricultural use of the land created dust and caused the plant trouble. In addition, the two parcels of land were zoned differently and the agricultural parcel could not be used for industry. Also, the president of ITT, in effect, testified that to the best of his knowledge, ITT never used any part of the agricultural parcel for its own activities. Appellant's only connection with the agricultural parcel was the mere fact that it held record title to the land; it made no active use of the land whatsoever and leased back the land to the seller, who continued to use it for farming purposes. Thus, the trial court's finding of fact that the two parcels were used for different purposes must be upheld, as must the conclusion of law that the two parcels did not constitute a single larger parcel within the meaning of Code of Civil Procedure, section 1248, subd. 2. (5) As stated in City of Menlo Park v. Artino, supra, 151 Cal. App.2d 261, 270-271, "... On appeal we are bound to indulge in very intendment which supports the judgment of the lower court. (Hind v. Oriental Products Co., Inc., 195 Cal. 655 [235 P. 438].) When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. (Hartzell v. Myall, 115 Cal. App.2d 670 [252 P.2d 676].)"
Appellant's contention that the trial court held as a matter of law that ITT was not entitled to compensation for the cost of curing air contamination caused by the freeway on the land taken is incorrect. The trial court excluded evidence of damage to the plant parcel on the grounds that it was not part of a "larger parcel," not on the grounds that air pollution is a non-compensable injury. Thus the cases cited are not in point.
(6) Appellant further contends that the issue is not severance damages in the customary sense, i.e., a diminution in value caused by severing the part taken from the remainder. Appellant contends that what we have here is damage occurring to the plant property which has rendered it less *836 valuable by reason of the construction and operation of the freeway, citing People v. O'Connor, 31 Cal. App.2d 157, 159 [87 P.2d 702]; City of Fresno v. Hedstrom, 103 Cal. App.2d 453, 456 [229 P.2d 809]; Los Angeles County Flood Control Dist. v. Southern Cal. Bldg. & Loan Assn., 188 Cal. App.2d 850 [10 Cal. Rptr. 811]; Albers v. County of Los Angeles, 62 Cal.2d 250 [42 Cal. Rptr. 89, 398 P.2d 129] and Cox v. State of California, 3 Cal. App.3d 301 [82 Cal. Rptr. 896].
Following the trial court's determination that the plant property was not part of the larger parcel, appellant limited its presentation of evidence to the damage occurring to the agricultural parcel. No evidence was offered relative to damage to the plant property from air contamination proximately caused by the construction or operation of the freeway. The court did not restrict the introduction of evidence as to damage to the plant property other than to prohibit its use as evidence of severance damages to the remainder of the larger parcel. Appellant argues, in its brief, that evidence of damage from dust, fumes, and other air contaminants is admissible even though no part of the property damaged is taken for the public improvement. This theory was not presented in the trial court nor was any evidence offered (or excluded by the court) to prove such damage. The theory is raised for the first time on appeal, with no facts in the record to support it.
Appellant in his brief relies on cases decided in the area of inverse condemnation. (e.g., Pierpont Inn, Inc. v. State of California (1969) 70 Cal.2d 282 [74 Cal. Rptr. 521, 449 P.2d 737]; Breidert v. Southern Pac. Co. (1964) 61 Cal.2d 659 [39 Cal. Rptr. 903, 394 P.2d 719].) (7) As stated in Breidert v. Southern Pac. Co., supra, page 663, footnote 1, "An inverse condemnation action is an eminent domain proceeding initiated by the property owner rather than the condemner. The principles which affect the parties' rights in an inverse condemnation suit are the same as those in an eminent domain action. (See Rose v. State, supra, 19 Cal.2d 713 [123 P.2d 505]; Bacich v. Board of Control, supra, 23 Cal.2d 343 [144 P.2d 818].)" It is immaterial, with certain exceptions not pertinent here,[2] whether the claim of damage is asserted in a pending condemnation suit or by way of an action in inverse condemnation. However, as stated above, the appellant did not assert such damage under either form of action. The burden of proving damage to the plant property was upon the appellant and obviously without offering evidence on the subject, it did not fulfill the burden of proof.
Appellant also maintains that part of the damage-causing activity is *837 conducted on the land taken from ITT and the right to be compensated follows a fortiori, citing People ex rel. Dept. Pub. Wks. v. Ramos, 1 Cal.3d 261 [81 Cal. Rptr. 792, 460 P.2d 992]. Furthermore, as discussed above, no proof of damage to the plant property was offered. Ramos involved the taking of a portion of a single parcel (see fn. 1, p. 262), and is thus distinguishable from the present case.
Appellant, by letter, has called the court's attention to the recent case of People ex rel. Dept. Pub. Wks. v. Volunteers of America, 21 Cal. App.3d 111 [98 Cal. Rptr. 423] and specifically the statement on page 118: "Under such circumstances, where there is a special detriment to the private land involved, it should be immaterial whether the works which caused the damage were wholly, or partially, or in no way upon some land which was taken from the private owner." The court, however, recognized that though perhaps desirable, this is not the law. The court further discussed the problem at pages 127-128 and then stated the rule: "It has already been pointed out that the test of whether the property taken is used for the portion of the project giving rise to the detrimental conditions is an arbitrary one.... It is also obvious that adjacent property is damaged to the same degree by the detrimental factors of a freeway whether no property is taken, whether a mere narrow strip is taken, or whether a substantial portion of the property is taken for the construction of the improvement. (See Van Alstyne, op. cit., 16 U.C.L.A.L.Rev., at pp. 503-505.) Until such time as provision is made for compensation of those who are merely adjacent (see id., at pp. 517-518; and Andrews v. Cox (1942) 129 Conn. 475, 478 [29 A.2d 587, 588-589]), they presumably may not recover proximity damages. Two wrongs do not make a right. Though illogical, the taking of the strip warrants the allowance of consequential damages under existing precedents.... If there is ... warrant for the compensation of such an owner, because a portion of his property has been taken, it should be granted if established by proper proof." (Italics added.)
In the present case no portion of the plant parcel was taken and the language relied upon by appellant on page 118, as the court pointed out, is not the law in California. Thus, People ex rel. Dept. Pub. Wks. v. Volunteers of America, supra, is of no help to appellant.
Judgment is affirmed.
Draper, P.J., and Brown (H.C.), J., concurred.
A petition for a rehearing was denied February 11, 1972, and appellant's petition for a hearing by the Supreme Court was denied March 8, 1972. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.
NOTES
[1] This figure was stated in an offer of proof by ITT's attorney, and in appellant's reply brief; the answer to the complaint, however, only requested $600,000 severance damages.
[2] See People v. Ricciardi, 23 Cal.2d 390, 400 [144 P.2d 799].